| | |
|---|---|
| Gregory S. Parks, J.D., Ph.D., <br> derivatively on behalf of Alpha Phi <br> Alpha Fraternity, Incorporated, <br><br> *Plaintiff,* <br><br> v. <br><br> Willis L. Lonzer, III, *et al.* <br><br> *Defendants* <br><br> and <br><br> Alpha Phi Fraternity, Incorporated <br><br> *Nominal Defendant.* | ) <br> ) <br> ) <br> ) <br> )     Case No.: 1:26-cv-2544 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR LEAVE TO EXCEED THE PAGE LIMIT FOR THE COMPLAINT**

Plaintiff Gregory S. Parks, J.D., Ph.D. ("Plaintiff"), by and through undersigned counsel, respectfully moves this Court, pursuant to Local Rule 103.2, for leave to exceed the page limitations set forth in the Local Rules of this Court for the Verified Derivative Complaint (the "Complaint") filed concurrently herewith (ECF 1). For the reasons below, the Motion should be granted.

### I.    Introduction

Pursuant to Local Rule 103.2 of the United States District Court for the District of Maryland, Plaintiff respectfully seeks leave of Court to exceed the standard page limitation prescribed by the Court's Local Rules and allow the Verified Derivative Complaint of approximately 77 pages filed concurrently herewith. (ECF 1). Extraordinary circumstances — including the number and geographic dispersion of parties, the breadth and duration of the factual

record, the number and complexity of the causes of action, the magnitude of the financial and institutional stakes, and the significant public interest implicated by this litigation — necessitate a filing that exceeds the applicable page limit. The interests of justice and judicial economy are best served by accepting the comprehensive Complaint filed herewith.

## II. Background

This action is a shareholder derivative suit brought by Plaintiff — a Life Member of Alpha Phi Alpha Fraternity, Incorporated (the "Fraternity") — on behalf of the Fraternity against seven individual Defendants: Willis L. Lonzer, III; Lucien J. Metellus, Jr.; Jeramaine O. Netherly; Daryl D. Parks, Esq.; Wayne C. Harvey, Esq.; Denny N. Johnson; and Cecil E. Howard. The Fraternity is named as a Nominal Defendant. (*See generally* ECF 1). The Defendants are domiciled in six different states — Illinois, Maryland, Texas, Florida, Missouri, and Maryland — and the Fraternity's principal place of business is in Baltimore, Maryland. (*See* ECF 1, ¶¶ 13-20).

The Complaint asserts ten separate causes of action: (I) Breach of Fiduciary Duty; (II) Breach of the Duty of Oversight / Failure of Internal Controls; (III) Aiding and Abetting Breach of Fiduciary Duty; (IV) Breach of Contract; (V) Civil Conspiracy; (VI) Waste of Corporate Assets; (VII) Unjust Enrichment; (VIII) Books and Records Inspection; (IX) Ultra Vires; and (X) Declaratory Judgment. (*See* ECF 1, ¶¶ 247-324). Each cause of action requires distinct factual allegations tailored to individual Defendants and must satisfy the heightened pleading requirements applicable to derivative actions under Federal Rule of Civil Procedure 23.1, including the demonstration of demand futility or wrongful refusal for each sitting member of the Board of Directors.

The factual allegations underlying these claims span more than a decade — from 2014 through the present — and encompass at least five distinct but interrelated categories of

institutional harm: (a) the knowing failure to remediate substantial federal tax noncompliance affecting hundreds of subordinate units nationwide; (b) the sustained failure to investigate, remediate, or implement safeguards against hazing and sexually predatory conduct, including incidents resulting in the deaths of candidates for membership; (c) the coordinated corruption of two consecutive General Presidential Elections through prohibited campaigning, defamatory falsehoods, voter-suppression tactics, concealment of material information, and unresolved ballot irregularities; (d) the depletion and misuse of Fraternity assets, including an unauthorized $750,000 "Constitutional Convention" and an approximately $250,000 unaccounted-for regional operating deficit; and (e) the systematic obstruction of investigation, retaliation against whistleblowers, and self-insulating governance amendments designed to shield incumbent leadership from accountability. (*See, generally*, ECF 1).

### III. Argument

Good cause exists for the Court to grant Plaintiff leave to exceed the page limitation for the Complaint. The extraordinary circumstances of this case — including the number of parties, the breadth and duration of the factual record, the number and complexity of the claims, the magnitude of the stakes, and the significant public interest implicated — require a more detailed pleading than the standard page limit permits.

#### A. The Number of Parties and the Derivative Posture of This Action Require Extensive Pleading.

The Complaint names seven individual Defendants — each of whom held a different fiduciary or operational role within the Fraternity — and one Nominal Defendant. (*See* ECF 1 at 1). These Defendants are domiciled in six different states, and the Complaint must plead facts establishing the Court's personal jurisdiction over each non-Maryland Defendant. (*See* ECF 1, ¶¶ 13-20). Moreover, because this is a derivative action brought pursuant to Federal Rule of Civil

Procedure 23.1, the Complaint must demonstrate, with particularity, that pre-suit demand was made and wrongfully refused or, alternatively, that demand on the Board would have been futile. This requires particularized allegations as to each of the fourteen voting members of the Fraternity's Board of Directors, showing that a majority is interested, lacks independence, or faces a substantial likelihood of personal liability, which the Verified Derivative Complaint makes. (*See* ECF 1 ¶¶, 228-46). These demand-futility allegations, which are a prerequisite to the Court's subject-matter jurisdiction, are inherently detailed and must be pled on a director-by-director basis.

### B. The Breadth and Duration of the Factual Record Are Extraordinary.

The factual predicate for this action spans more than a decade, from 2014 through the present. (*See, generally*, ECF 1). The allegations are not limited to a single transaction or a discrete course of conduct. Rather, they encompass five interrelated but factually distinct categories of institutional harm:

First, the Complaint alleges that the Fraternity's senior fiduciaries have known since at least 2018 that the Fraternity lacks a group tax exemption and that the vast majority of its hundreds of subordinate units — regions, districts, and chapters spread across the country — are not recognized as tax-exempt, yet Defendants failed to quantify or remediate the resulting back-tax exposure. (*See* ECF 1, ¶¶ 251, 255, 260-61, 266-67, 275-76, 282-83, 287, 314(b)). This category of allegations involves a course of conduct spanning at least eight years, implicating communications with the IRS, internal memoranda, Board minutes, a General Comptroller's report, and a September 2025 tax directive that compounded rather than cured the problem. (*Id.*).

Second, the Complaint alleges a sustained failure to investigate, remediate, or implement safeguards against hazing and sexually predatory conduct — failures that have resulted in the deaths of at least two candidates for membership, nearly $3,000,000 in settlement costs and

attorneys' fees, a 150% increase in the Fraternity's insurance premiums, and exclusions from general liability coverage for uninvestigated and unremedied incidents. (*See* ECF 1, ¶¶ 5, 82-96, 255, 267, 276). These allegations span from 2014 through 2026 and involve multiple incidents across multiple regions. (*Id.*).

Third, the Complaint alleges the coordinated corruption of two consecutive General Presidential Elections — the Thirty-Sixth (2017–2020) and the Thirty-Seventh (2022–2024). These allegations involve prohibited early campaigning; the dissemination of false and defamatory narratives, including fabricated claims about Plaintiff's sexual orientation and policy positions; the recruitment of surrogates and "henchmen" to attack Plaintiff and his supporters; voter-suppression tactics by the sitting General President using the General Office's communications infrastructure; concealment of material information regarding another candidate's alleged sexual misconduct with a minor; the theft of campaign materials; prohibited campaigning by General Office staff who simultaneously controlled the membership data files used for balloting; ballot irregularities; a sham post-election "review" directed by implicated fiduciaries; and the appointment of a disbarred attorney as a purported independent investigator. (*See* ECF 1, ¶¶ 212-18). The election-interference allegations alone involve dozens of discrete acts by multiple Defendants over a multi-year period. (*See* ECF 1, ¶¶ 6, 97-177, 212-18, 223, 233-39, 251, 266, 282).

Fourth, the Complaint alleges the depletion and misuse of Fraternity assets, including an unauthorized 2024 "Constitutional Convention" in Chicago costing approximately $750,000; an approximately $250,000 unaccounted-for operating deficit in the Southern Region; and Defendant Daryl Parks's use of the Fraternity's membership directory and communications infrastructure to support his personal campaign for the Florida Senate. (*See* ECF 1, ¶¶ 203).

Fifth, the Complaint alleges the systematic obstruction of investigation, retaliation against whistleblowers in violation of the Fraternity's own Whistleblower Policy, and the promulgation of self-insulating election-rule amendments designed to channel fiduciary-misconduct disputes into non-public arbitration and shield Defendants from accountability. (*See* ECF 1, ¶¶ 223-27).

A derivative complaint that alleges a decade-long pattern of fiduciary misconduct, election corruption, tax noncompliance, asset waste, and obstruction — and that must plead demand futility with particularity — necessarily requires the space to present, describe, and weave together a documentary record of this scope. A comprehensive recitation of the underlying facts is necessary to satisfy the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and to present a coherent narrative that will assist the Court and Defendants in understanding the scope of the dispute.

### C. The Complaint Asserts Ten Separate Causes of Action, Each Requiring Distinct Factual Allegations.

The Complaint asserts ten causes of action: I) Breach of Fiduciary Duty; (II) Breach of the Duty of Oversight / Failure of Internal Controls; (III) Aiding and Abetting Breach of Fiduciary Duty; (IV) Breach of Contract; (V) Civil Conspiracy; (VI) Waste of Corporate Assets; (VII) Unjust Enrichment; (VIII) Books and Records Inspection; (IX) Ultra Vires; and (X) Declaratory Judgment. (*See* ECF 1, ¶¶ 247-324). Each count incorporates distinct legal theories and requires tailored factual allegations as to specific Defendants. (*Id.*). Several counts are pled in the alternative, which by its nature requires additional pleading. (*See* ECF 1, ¶¶ 268-76, 295-300). The Complaint must also identify with specificity the particular acts of each Defendant giving rise to each cause of action, the particular fiduciary duties breached, and the particular harm to the Fraternity flowing from each category of misconduct.

**D. The Stakes — Financial, Institutional, and Reputational — Are Substantial and Implicate Significant Public Interest.**

The Fraternity is the oldest continuous intercollegiate Greek-letter organization founded by African Americans, chartered in 1906 at Cornell University. (*See* ECF 1 ¶¶ 30-35). Its members past and present include United States Vice President Hubert H. Humphrey, United States Supreme Court Justice Thurgood Marshall, and Dr. Martin Luther King, Jr. (*See* ECF 1, ¶ 33). The Fraternity's reputation and membership rolls are corporate assets with concrete economic value: they drive member retention, recruitment, chapter placement on college campuses, community partnerships, and fundraising. (*Id.*).

The financial stakes in this case are substantial. The Complaint seeks compensatory damages including: approximately $750,000 expended on the unauthorized 2024 Constitutional Convention; an approximately $250,000 unaccounted-for Southern Region deficit; nearly $3,000,000 in hazing-related settlement costs and attorneys' fees; a 150% increase in insurance premiums; material but unquantified federal and state tax exposure, with statutory interest and penalties, for hundreds of subordinate units nationwide; and the institutional costs of leadership installed through a corrupted election. (*See* ECF 1, ¶¶ 82-96). The Complaint also seeks disgorgement, constructive trust, accounting, surcharge, and indemnification of subordinate units for tax exposure. (*See* ECF 1 ¶¶ 256; *id.* at 73-75).

Beyond the financial stakes, this case implicates issues of profound public importance. The Fraternity is one of the most prominent historically African American organizations in the United States. Its governance failures — including deaths from hazing, uninvestigated sexual predation, massive tax noncompliance, and the corruption of democratic elections — have consequences that extend well beyond the organization itself. These issues affect the safety and rights of college students, the integrity of nonprofit governance, and the public trust in institutions that serve the

African American community. A thorough and transparent pleading of these facts serves the public interest.

### E. The Complaint References Over Thirty Exhibits and Must Plead Facts Sufficient to Support Each.

The Complaint is accompanied by over thirty documentary exhibits, including the Fraternity's Articles of Incorporation, Constitution and By-Laws, Board Governance Manual, Membership Manual, Election Handbook, Whistleblower Policy, IRS correspondence, tax memoranda, Board minutes, internal emails, demand letters, text messages, and other contemporaneous documents. (*See generally* Compl.) These exhibits serve three essential functions: (1) establishing the contractual and fiduciary framework – derived from no less than six foundational governing documents – that gives rise to Defendants' duties and breaches; (2) satisfying Rule 23.1's requirement that Plaintiff plead with particularity the pre-suit demands, the Board's wrongful refusal, and demand futility; and (3) corroborating the factual allegations of tax noncompliance, election interference, asset waste, and obstruction with contemporaneous documentary evidence. The Complaint must identify, describe, and contextualize each exhibit, which contributes meaningfully to the length of the filing.

### F. Granting Leave Will Promote Judicial Economy and Will Not Prejudice Defendants.

Granting leave to exceed the page limitation will promote judicial economy. The comprehensive Complaint filed herewith will reduce the likelihood of ambiguity or confusion, minimize the need for early motions practice directed at the sufficiency of the pleading, and facilitate more efficient case management going forward. In particular, the particularized demand-futility and demand-refusal allegations required by Rule 23.1 are best presented in the single, cohesive filing submitted herewith rather than parceled out over successive amended complaints.

Plaintiff has endeavored to draft the Complaint as concisely as possible, consistent with the requirements of Rule 8 of the Federal Rules of Civil Procedure and Rule 23.1. The additional pages sought are not the product of unnecessary repetition or verbosity, but rather reflect the genuine complexity and gravity of the claims, the number of parties and causes of action, and the extraordinary breadth of the factual record. Accepting the Complaint as filed will not prejudice Defendants or unduly burden the Court.

## IV.     Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant leave to exceed the page limitation and accept the Verified Derivative Complaint filed concurrently herewith, which does not exceed 80 pages. A proposed order granting this Motion is attached.

/s/ *Jasmine G. Chalashtori*
Jasmine G. Chalashtori (Bar No. 20179)
2001 K Street NW, Suite 400 South
Washington, DC 20006
(202) 857-4410
Jasmine.Chalashtori@wbd-us.com

James E. Connelly (*pro hac vice* pending)
1331 Spring St. NW, Suite 1400
Atlanta, GA 30309
(404) 888-7496
James.Connelly@wbd-us.com

Andre M. Davis (D. Md. reactivation filed)
Chukwukpee Nzegwu (Bar No. 21730)
100 Light St, 26th floor
Baltimore, MD 21202
(410) 545-5861
Chukwukpee.Nzegwu@wbd-us.com

*Counsel for Plaintiff*