**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Gregory S. Parks, J.D., Ph.D., derivatively on behalf of Alpha Phi Alpha Fraternity, Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Willis L. Lonzer, III,<br>Lucien J. Metellus, Jr.,<br>Jeramaine O. Netherly,<br>Daryl D. Parks,<br>Wayne C. Harvey,<br>Denny N. Johnson,<br>Cecil E. Howard,<br><br>Defendants,<br><br>and<br><br>Alpha Phi Alpha Fraternity, Incorporated<br><br>Nominal Defendant. | ) | Case No.: 1:26-cv-02544 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Sydney Hargrove (D. Md. Bar No. 30951)
Jarrod Loadholt (*pro hac vice forthcoming*)
**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Avenue, NW, Suite 800
Washington, DC 20036
Phone: (202) 971-4064
Fax: (202) 408-5146
shargrove@taftlaw.com
jloadholt@taftlaw.com

Dated: August 14, 2026

# TABLE OF CONTENTS

Table of Authorities ........ ii

Preliminary Statement ........ 1

Factual Background ........ 2

Standard of review ........ 5

Argument ........ 6

I. Plaintiff Fails to Satisfy Threshold Requirements ........ 6

A. Plaintiff Lacks Standing ........ 6

B. Demand Is Not Satisfied or Excused ........ 9

II. Plaintiff's Claims Are Barred by the Applicable Statute of Limitations ........ 16

III. Choice-of-Law Analysis Requires Application of Illinois and Maryland Law ........ 18

A. "Internal Affairs Doctrine" Requires Application of Illinois Law ........ 18

B. *Lex Loci Contractus* Requires Application of Maryland Law ........ 20

IV. Plaintiff Fails to State a Claim Against Defendants ........ 21

A. Counts I, II, III, and VI Should Be Dismissed Because Plaintiff Cannot Rebut the Business Judgment Rule ........ 21

B. Counts IV and VII Should Be Dismissed Because There is No Breach of an Express Contract ........ 25

C. Count V Should Be Dismissed Because Defendants Acted Within the Scope of Their Organizational Duties ........ 26

D. Count VIII Should Be Dismissed Because Plaintiff Has No Voting Rights ........ 27

E. Count IX Should Be Dismissed Because Defendants' Actions Were Within Corporate Authority ........ 28

F. Count X Should Be Dismissed Because There Is No Live Controversy ........ 29

Conclusion ........ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat'l Bank v. Richoz*,
545 N.E.2d 550 (Ill. App. 2d Dist. 1989) ....9, 10

*Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*,
460 F. Supp. 3d 621 (2020) .... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Bilut v. Nw. Univ.*,
692 N.E.2d 1327 (Ill. App. 1st Dist. 1998)....26

*In re Birmingham*,
846 F.3d 88 (4th Cir. 2017) ....5

*Caparos v. Morton*,
845 N.E.2d 773 (Ill. App. 1st Dist. 2006)....7, 8, 9

*Capitol Indem. Corp. v. Stewart Smith Intermediaries*,
593 N.E.2d 872 (Ill. App. 1st Dist. 1992)....22

*Elleby v. Forest Alarm Serv., Inc.*,
164 N.E.3d 613 (Ill. App. 1st Dist. 2020)....8, 22, 23

*Epcon Homestead, LLC v. Town of Chapel Hill*,
62 F.4th 882 (4th Cir. 2023) ....6

*Forrester Constr. Co. v. Forrester*,
Case No. 486728-V, 2021 Md. Cir. Ct. LEXIS 15 (Md. Cir. Ct. Nov. 2, 2021)....19

*Froelich v. Erickson*,
96 F. Supp. 2d 507 (D. Md. 2000)....26

*Gen. Ins. Co. of Am. v. Walter E. Campbell Co., Inc.*,
241 F. Supp. 3d 578 (D. Md. 2017)....16

*Goodwill Indus. of Lane & S. Coast Ctys. v. Goodwill Indus. Int'l, Inc.*,
242, SEPT. TERM,2024, 2025 WL 2684364 (App. Ct. Md. Sept. 19, 2025)....19

*Harden v. Budget Rent A Car Sys., Inc.*,
726 F. Supp. 3d 415 (D. Md. 2024)....6

*In re Huron Consulting Grp., Inc. S'holder Derivative Litig.*,
971 N.E.2d 1067 (Ill. App. 1st Dist. 2012).... *passim*

*Ives v. Advanced Broadband Sols., Inc.*,
Civ. Action No. DKC 2003-0848, 2004 U.S. Dist. LEXIS 968 (D. Md. Jan. 23, 2004) ....................19

*Johnson v. Matrix Fin. Servs. Corp.*,
820 N.E.2d 1094 (Ill. App. 1st Dist. 2004)....................23

*Kim v. Cedar Realty Tr., Inc.*,
116 F.4th 252 (4th Cir. 2024) ....................6

*Kumar v. Bornstein*,
820 N.E.2d 1167 (Ill. App. 2d Dist. 2004) ....................22

*Liqui-Box Corp. v. Scholle IPN Corp.*,
449 F. Supp. 3d 790 ....................26, 27

*Murchie v. Sorensen*,
2015 IL App (1st) 133719-U ....................24

*Padco Advisors, Inc. v. Omdhal*,
179 F. Supp. 2d 600 (D. Md. 2002)....................20

*Papasan v. Allain*,
478 U.S. 265 (1986)....................6

*Polek v. J.P. Morgan Chase Bank, N.A.*,
36 A.3d 399 (Md. 2012) ....................25, 26

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) ....................11

*RSA Properties Mission Hills, P.C. v. Mission Hills Homeowners Assn.*,
264 N.E.3d 1041 (Ill. App. 1st Dist. 2024)....................29

*Sadler v. Dimensions Healthcare Corp.*,
836 A.2d 655 (Md. 2003) ....................26

*Sherman v. Ryan*,
911 N.E.2d 378 (Ill. App. 1st Dist. 2009).................... *passim*

*Smiley v. Bhatnagar*,
No. 21-2172, 2023 WL 2966036 (4th Cir. Apr. 17, 2023) ....................7

*Sopkin v. Mendelson*,
746 F. App’x 157 (4th Cir. 2018) ....................5, 16

*Staisz v. Resurrection Physicians Provider Grp., Inc.*,
209 N.E.3d 361 (Ill. App. 1st Dist. 2022)....................7, 9

*Stamp v. Touche Ross & Co.*,
636 N.E.2d 616 (Ill. App. 1st Dist. 1993)....................15, 22

*State Auto. Mut. Ins. Co. v. Lennox*,
422 F. Supp. 3d 948 (D. Md. 2019)....................18, 20

*Steele v. Diamond Farm Homes Corp.*,
211 A.3d 411 (Md. 2019) ....................19

*Storetrax.com, Inc. v. Gurland*,
895 A.2d 355 (Md. Spec. App. 2006)....21

*Three M Enters. v. Tex. D.A.R. Enters.*,
368 F. Supp. 2d 450 (D. Md. 2005)....20, 21

*Tobacco Tech., Inc. v. Taiga Int'l N.V.*,
388 F. App'x 362 (4th Cir. 2010)....17

*Travelers Indem. Co. of Am. v. Townes of Cedar Ridge Condo. Ass'n*,
207 N.E.3d 361 (Ill. App. 3d Dist. 2022)....29

*Travelers Ins. Co. v. Hermann*,
140 A. 64 (Md. 1928)....26

*Umrani v. Sindhi Ass'n of N. Am.*,
201 N.E.3d 40 (Ill. App. 1st Dist. 2021)....8

*Valiquet v. First Federal Sav. & Loan Ass'n of Chicago*,
408 N.E.2d 921 (Ill. App. 1st Dist. 1979)....9

*Wolfson v. Dugout Northbrook, LLC*,
277 N.E.3d 446 (Ill. App. 1st Dist. 2025)....27

**Statutes**

Ill. Comp. Stat. § 105/107.75 (a)....7, 8, 9, 27

Ill. Comp. Stat. § 105/107.80....7, 8

Md. Code Ann., Cts. & Jud. Proc. § 5-101....16

**Rules**

Fed. R. Civ. P. 12(b)(6)....1, 5

Fed. R. Civ. P. 23.1....1, 5, 6, 8

Fed. R. Civ. P. 23.1(b)(1)....5

Defendants Willis L. Lonzer, III, Lucien J. Metellus, Jr., Jermaine O. Netherly, Daryl D. Parks, Wayne C. Harvey, Denny N. Johnson, Cecil E. Howard, and nominal defendant Alpha Phi Alpha Fraternity, Inc. (individually and collectively, "Defendants"), respectfully submit this memorandum of law in support of its motion to dismiss Plaintiff's claims against them for lack of standing under Fed. R. Civ. P. 23.1 and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This lawsuit is not a challenge to unlawful conduct. It is an attempt by Plaintiff Gregory S. Parks, J.D., Ph.D. ("Plaintiff") to enlist this Court in the internal affairs of Alpha Phi Alpha Fraternity, Inc. (the "Fraternity") after he lost two elections for General President, the highest office in which a member can serve.

Plaintiff's seventy-five (75)-page complaint (the "Complaint") is an attempt to transform Fraternity policies, election grievances, and disagreements regarding the Fraternity's responses to matters raised by the Plaintiff into a federal lawsuit. Framed as a derivative action, the Complaint challenges virtually every aspect of the Fraternity's operations, from elections and tax compliance, to investigations and disciplinary matters. But Plaintiff lacks standing to pursue these claims on the Fraternity's behalf, and his allegations do not satisfy the requirements for stating any of the claims asserted.

The Complaint's central flaw is that it asks the Court to manage the Fraternity's internal affairs in the manner that the Plaintiff would had he prevailed as General President instead of identifying legally actionable misconduct. Plaintiff alleges misconduct in almost every corner of the organization, yet his own allegations also acknowledge the existence of the very governance structures, reporting systems, and decision-making processes he now claims were absent or

deficient. His dissatisfaction with those processes and their outcomes does not give rise to a legal claim.

Ultimately, the Complaint offers a sweeping narrative but not plausible causes of action. Because Plaintiff lacks standing to pursue his derivative claims and because the Complaint fails to plead facts sufficient to establish any cognizable claim for relief, it should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff, a member of the Fraternity, brings this derivative action against Defendants challenging a broad range of decisions, events, and internal disputes that allegedly occurred within the Fraternity over a period exceeding a decade. As Plaintiff correctly concedes, he is not a voting member of the Fraternity, and those powers are inherently vested in the fourteen voting members of the Fraternity's General Board of Directors (the "Board" or "Board of Directors"), including the Defendants to this action.[1] Compl. ¶¶ 12, 53, 231. Plaintiff's allegations that follow reflect his repeated disagreements with the way in which Defendants have exercised their organizational duties, which he rebrands as organizational misconduct.

The Complaint's allegations principally concern four categories of alleged organizational misconduct in violation of the Fraternity's Governing Documents:[2] (1) the Fraternity's handling of tax-related issues involving subordinate entities; (2) alleged failures to investigate or address

[1] Defendants Lonzer, Metellus, Howard, Netherly are former and current members of the Fraternity's Board. The other Defendants held or currently hold different leadership positions at the Fraternity: Defendants Daryl Parks and Harvey are the Fraternity's former and current General Counsel, respectively; and Defendant Johnson serves as an Assistant Executive Director of the Fraternity. *See* Compl. ¶¶ 13-19.

[2] As used herein, the term "Governing Documents" refers to the following Fraternity documents attached to the Complaint and incorporated by reference herein: the Constitution and By-Laws ("Compl. Ex. 2"); the Board Governance Manual ("Compl. Ex. 3"); the Membership Manual ("Compl. Ex. 4"); the Election Handbook ("Compl. Ex. 5"); and the Whistleblower Policy ("Compl. Ex. 6").

reports of hazing and other types of member misconduct; (3) alleged violations of the Fraternity's election procedures and other policies during the Thirty-Sixth and Thirty-Seventh General Presidential Elections, in both of which Plaintiff lost as a candidate; and, (4) various allegedly unauthorized actions undertaken by Fraternity leadership during 2024 and 2025. *See* Compl. ¶¶ 4-8, 57-227.

With respect to his tax-related claims, Plaintiff alleges that Defendants failed to quantify or remediate the exposure to the Fraternity from the risk of alleged tax noncompliance despite having notice of potential issues as early as 2018, and again in 2021. *See* Compl. ¶¶ 57-81.

As to the Fraternity's alleged failure to investigate, Plaintiff admits that the Governing Documents reflect the Fraternity's written governance procedures that include processes for handling reports of misconduct, but alleges Defendants failed to initiate the established processes or did not properly handle the reports raised in the established system. *See e.g.*, Compl. ¶¶ 42-48. More specifically, he alleges there were "credible" reports of hazing and sexually predatory conduct that the Fraternity either failed to investigate or referred into the reporting system, but thereafter retained individuals to investigate that were unacceptable to Plaintiff. *Id*. at ¶¶ 184-195, 217-218. Plaintiff also contends those efforts were inadequate and not independent. *Id*. at ¶¶ 183-195.

Plaintiffs further alleges violations of the Elections Handbook during the Thirty-Sixth General Presidential Election in 2020 and the Thirty-Seventh General Election in 2024. According to the Complaint, Defendants interfered with the election through: misuse of official authority (*see* Compl. ¶¶ 127-40, 146-50); dissemination of false information concerning Plaintiff (*see* Compl. ¶¶ 128-35, 152); selective enforcement of election rules (*see* Compl. ¶¶ 143-45); concealment of information regarding other candidates (*see* Compl. ¶¶ 155-65); improper

involvement of General Office personnel in campaign activities (*see* Compl. ¶¶ 166-75); and irregularities in the administration of ballots (*see* Compl. ¶¶ 176-77).

Plaintiff alleges he made his first "demand" to the Fraternity in February 2024, requesting investigations, governance reforms, and other internal corrective measures related to the recent election results. Compl. ¶¶ 179-80. As reflected in the letter attached to the Complaint, Plaintiff desired to resolve the matter within the Fraternity and without litigation, if possible. *See* Compl. Ex. 22. Plaintiff also alleges that, at some unspecified point in 2024, and presumably after this initial "demand," (i) all Defendants conspired "to conceal and forestall investigation of election interference, financial mismanagement, tax noncompliance, and other fiduciary breaches" (Compl. ¶ 282) and, (ii) Defendant Daryl Parks improperly used membership contact information available through the Fraternity to circulate campaign materials while seeking elected office in Florida to solicit campaign support and contributions (*see* Compl. ¶¶ 207-10; Compl. Ex. 25).

Plaintiff made another "demand" in February 2025, just after his opponent Defendant Metellus assumed office as General President, raising more governance concerns, including an alleged unauthorized 2024 "Constitutional Convention," alleged mismanagement of the Southern Region's finances, and renewed tax compliance complaints. *See* Compl. ¶¶ 198-202, 203-05, 212-14. Again, as evidenced in correspondence attached to the Complaint, Plaintiff did not want to resolve this dispute outside the Fraternity or through litigation. *See* Compl. Ex. 26. Plaintiff further alleges that, in response to his "demand," the Fraternity's Board of Directors declined to undertake an independent investigation and instead appointed a disbarred attorney to review his claims. *See* Compl. ¶¶ 215-17. Critically, Plaintiff does not allege his claims were not reviewed by the Fraternity under its governance framework.

Although the Complaint spans more than 300 paragraphs and asserts ten causes of action, its allegations primarily concern historical events that predate the commencement of this action, many of which by several years. As pled, the Complaint details Plaintiff's unsuccessful efforts to persuade the Fraternity's leadership to revisit those matters, conduct additional investigations, and adopt governance reforms he advocated. Plaintiff seeks to recast these longstanding disputes as claims for breach of fiduciary duty, failure of internal controls, breach of contract, conspiracy, corporate waste, unjust enrichment, and other theories of corporate misconduct. As discussed below, however, the Complaint fails to allege facts sufficient to satisfy the elements of any such claims, i.e., facts sufficient to convert disagreements with internal governance decisions into actionable misconduct.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 23.1, a derivative plaintiff must allege, *inter alia*, that he was a shareholder or member of the organization when the complained-of conduct occurred, or that he later acquired his shares or membership interest by operation of law. *See* Fed. R. Civ. P. 23.1(b)(1); *Sopkin v. Mendelson*, 746 F. App'x 157, 160-161 (4th Cir. 2018). Federal courts sitting in diversity will apply the choice-of-law rules of the forum state to determine the proper classification of claims and whether a plaintiff has standing to bring them. *Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank,* 460 F. Supp. 3d 621, 643 (2020).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action based upon a plaintiff's "failure to state a claim upon which relief can be granted." In essence, a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See In re Birmingham,* 846 F.3d 88, 92 (4th Cir. 2017). Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion, in order to provide the grounds for entitlement to relief, a plaintiff must tender "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of

action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must contain sufficient factual matter, which if accepted as true, states a claim to relief that is plausible on its face. *Id.* at 570. A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

In considering a 12(b)(6) motion to dismiss, a court must only accept as true the well-pleaded factual allegations contained in the complaint. *Ark. Nursing Home*, 460 F. Supp. 3d at 636. However, a court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Kim v. Cedar Realty Tr., Inc.*, 116 F.4th 252, 260, n.7 (4th Cir. 2024). Nor must the court accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions devoid of further factual enhancement." *Harden v. Budget Rent A Car Sys., Inc.*, 726 F. Supp. 3d 415, 426 (D. Md. 2024) (*quoting Iqbal*, 556 U.S. at 678). By the same token, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a motion to dismiss may be granted on statute of limitations grounds if the facts giving rise to the statute of limitations defense are apparent from the face of the complaint. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (citations omitted).

## ARGUMENT

### I. PLAINTIFF FAILS TO SATISFY THRESHOLD REQUIREMENTS

#### A. Plaintiff Lacks Standing[3]

Plaintiff does not have standing to bring this derivative action under Federal Rule of Civil Procedure 23.1 for one simple reason: he is *not* a voting member of the Fraternity's Board—the

---

[3] As discussed in more detail *infra* Section III, under this Court's choice-of-law analysis, the law of the state of incorporation—Illinois—applies to the threshold question of standing. *See Ark. Nursing Home*, 460 F. Supp. 3d at

body of organizational agents whose actions Plaintiff alleges form the basis of his Complaint. *See* 805 Ill. Comp. Stat. § 105/107.80. Plaintiff's status as a non-voting member of the Fraternity's Board also renders him unable to state a claim for a books and records inspection. *See* 805 Ill. Comp. Stat. § 105/107.75 (a).[4] Accordingly, Plaintiff does not have standing to bring any of the claims asserted in the Complaint derivatively or otherwise. The Court need look no further to dismiss the Complaint with prejudice. *See Staisz v. Resurrection Physicians Provider Grp., Inc.*, 209 N.E.3d 361, 367-68 (Ill. App. 1st Dist. 2022) (upholding the trial court's dismissal of plaintiff's derivative action with prejudice because the facts established she had no standing to bring the lawsuit).

***Classification of Claims.*** As an initial matter, Defendants quickly address the proper classification of the claims asserted in the Complaint. Plaintiff affirmatively avers that he brings this action derivatively on behalf of the Fraternity and does not assert any "direct-action claims." Compl. ¶¶ 1, 10. While this characterization is not controlling,[5] Counts I-VII, IX, and X are appropriately classified as derivative claims because the Complaint alleges that the Fraternity, alone, suffered the resulting injuries and/or is the only party entitled to relief under the law. *See* Compl. ¶¶ 255-56, 267, 276, 280, 287, 294, 300, 316-18, 323; *Staisz*, 209 N.E.3d at 367 (finding derivative claims where injury alleged to result to the corporation).

---

643-44 (invoking Maryland's "internal affairs doctrine" to the question of standing to pursue a derivative action and applying Delaware law); *Smiley v. Bhatnagar*, No. 21-2172, 2023 WL 2966036, at *2 (4th Cir. Apr. 17, 2023) (same but applying New Jersey law).

[4] Additionally, the Membership Manual states that "[t]he Executive Director, at least once in each year, is to deliver the Fraternity's financial books and records to the person or persons authorized by the Board of Directors to audit such books and records," without expanding that such authority belongs to general members. Compl. Ex. 4 at p. 56.

[5] *See Caparos v. Morton*, 845 N.E.2d 773, 781 (Ill. App. 1st Dist. 2006) ("[T]he court, in determining whether an individual or derivative claim is stated, is not bound by the designations used by the parties but instead considers the nature of the alleged injury.").

Count VIII is different. The right to inspect a corporation's books and records belongs solely to individual shareholders with voting rights to shape and direct company policy and operations. *See* 805 Ill. Comp. Stat. § 105/107.75 (a) ("Any voting member shall have the right to examine … the corporation's books and records"). As a result, Illinois courts classify them as direct claims, but permit such claims to proceed alongside derivative claims in the same action, evaluating them separately. *See Elleby v. Forest Alarm Serv., Inc.*, 164 N.E.3d 613, 621-24 (Ill. App. 1st Dist. 2020); *Caparos*, 845 N.E.2d at 783.

We now address standing for derivative claims and direct-action claims separately, even though they suffer from the same fatal flaw: Plaintiff's status as a non-voting member of the Fraternity.

***No Standing for Derivative Claims.*** Under Illinois's General Not for Profit Corporation Act of 1986 (the "Act"), only voting members can bring derivate suits. 805 Ill. Comp. Stat. § 105/107.80 (providing "voting member[s] [the right] to bring an action in this State in the right of such corporation"). This right afforded to voting members under the Act does not exist in common law, nor does the Act provide such right to any other type of member. *Id.*

By his own admission, Plaintiff is not a voting member of the Fraternity; rather, he is merely a "member of the Fraternity at all times relevant" to the Complaint. *See* Compl. ¶¶ 12, 228. Plaintiff also admits that there are established voting members of the Board, and identifies in the Complaint. *See id*. at ¶¶ 53, 231. This fact is dispositive and insurmountable by Plaintiff's other Rule 23.1 allegations. *See e.g.*, *Umrani v. Sindhi Ass'n of N. Am.*, 201 N.E.3d 40, 48-50 (Ill. App. 1st Dist. 2021) (affirming dismissal for lack of standing where plaintiff did not fit the statutory definition of the type of corporation member holding the right to file a derivative suit).

Therefore, Plaintiff does not have standing to pursue a derivate suit under Illinois law and his derivative claims asserted in Counts I-VII, IX, and X should be dismissed on that basis.

***No Standing for Direct-Action Claims.*** Count VIII meets the same fate. Under Illinois law, the only shareholders with the right to examine a corporation's books and records are its voting members. *See* 805 Ill. Comp. Stat. § 105/107.75 (a) ("Any ***voting member*** shall have the right to examine, in person or by agent, at any reasonable time or times, the corporation's books and records of account and minutes") (emphasis added); *id*. ("[A] a ***voting member*** must make written demand upon the corporation") (emphasis added). Plaintiff has already conceded that he falls outside the class of individuals authorized to bring this claim. *See* Compl. ¶¶ 12, 53, 228, 231. That concession is fatal to his standing to pursue Count VIII as well.

Plaintiff lacks standing as a matter of law on every claim asserted in the Complaint. That defect is incurable on the facts alleged and disposes of this action entirely. Accordingly, the Court should dismiss the Complaint with prejudice. *See Staisz*, 209 N.E.3d at 367-68; *see e.g.*, *Caparos*, 845 N.E.2d at 783.

### B. <u>Demand Is Not Satisfied or Excused</u>

Even if this Court finds Plaintiff has standing—which Defendants do not concede—he still fails to show the requisite and independent demand requirement for a derivative action is satisfied or, in the alternative, that demand is futile.

***No Valid Demand.*** Under Illinois law, before a shareholder can bring a derivative suit, he "must demand that the corporation's directors bring suit" first. *Valiquet v. First Federal Sav. & Loan Ass'n of Chicago*, 408 N.E.2d 921, 924 (Ill. App. 1st Dist. 1979). *See also Am. Nat'l Bank v. Richoz*, 545 N.E.2d 550, 555 (Ill. App. 2d Dist. 1989) (affirming dismissal of a derivative claim where there was no allegation that the corporation's directors were previously demanded to bring suit).

Here, as evinced on the face of Plaintiff's "demand" letters, Plaintiff never demanded the Board bring suit on behalf of the Fraternity. Quite the opposite—Plaintiff made clear he did ***not*** want to initiate a legal process; rather, he wanted to collaboratively address his complaints in-house. *See* Compl. Ex. 22 at p. 1 ("It's my hope that we can resolve this matter within the Fraternity with some level of urgency. I've purposefully sent this letter to you and not through legal counsel.") (emphasis added); Compl. Ex. 26 at p. 4 ("As stated in his February 29, 2024 letter to the General Officers of the Fraternity, [Plaintiff's] desire is to resolve this dispute with the Fraternity in 'a brotherly and restorative manner'") (emphasis added). A desire to avoid involving legal counsel or to resolve disputes internally cannot be reasonably be interpreted as a demand for the Board to initiate litigation. *See Am. Nat'l Bank*, 545 N.E.2d at 554-55. Accordingly, Plaintiff's "demand" letters cannot establish standing for him to bring this derivative action.

***Demand Should Not Be Excused.*** Equally unavailing are Plaintiff's allegations that demand should be excused because these allegations reflect Plaintiff's frustration, not futility. In order to state a claim for demand futility, a plaintiff must plead with more specificity than required to survive an ordinary motion to dismiss. *In re Huron Consulting Grp., Inc. S'holder Derivative Litig.*, 971 N.E.2d 1067, 1080 (Ill. App. 1st Dist. 2012). Demand is only excused if a complaint pleads particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent or (2) the challenged conduct was the product of valid business judgment. *Id*. The first standard is applied to all demand futility claims no matter the theory of liability. *Id*. However, when a plaintiff alleges a board failed to act, i.e., does not attack an affirmative board decision, the second standard does not apply. *Id*. at 1080-81; *Sherman v. Ryan*, 911 N.E.2d 378, 390 (Ill. App. 1st Dist. 2009).

Plaintiff's allegations are best categorized into three theories of liability: conflict of interest (*see* Compl. ¶¶ 233, 235, 239, 241-43); unauthorized conduct (*see* Compl. ¶¶ 233-40, 244); and wrongful refusal to investigate (*see* Compl. ¶¶ 229, 232, 240-44). Plaintiff must establish impartiality and bad faith for his conflict of interest and unauthorized conduct claims to survive, and only impartiality for his wrongful refusal claims. The Complaint can do neither.

i. Director Impartiality

The inquiry into director impartiality is focused on whether the directors can "act independently of personal financial interest and improper extraneous influences." *In re Huron*, 971 N.E.2d at 1081 (citation and quotation marks omitted).[6] The mere threat of personal liability, standing alone, "is insufficient to challenge either the independence or disinterestedness of directors." *Sherman*, 911 N.E.2d at 390 (citation omitted).

Here, Plaintiff's conflict of interest theory fails at the outset because the Complaint is devoid of allegations that Defendants acted in a manner exhibiting an interest in using corporate funds for their own pecuniary gain, let alone doing so. Defendants are not employees of the Fraternity nor otherwise have personal financial stakes in its operation.[7] *Cf. Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (finding directors "interested" where they had an interest in maintaining their employment at the company). The Complaint does not allege Defendants sought or received ill-gotten gains from the purported tax non-compliance, and it admits that all relevant

[6] *See id*. at 1082 ("Interested" directors are those who "receive[] a personal financial benefit from a transaction that is not equally shared by the stockholders.") (citation omitted); *Sherman*, 911 N.E.2d at 390 ("Directorial interest also exists when a corporate decision will have a materially detrimental impact on a director but not the corporation or its stockholders.") (citation and quotation marks omitted).

[7] And Plaintiff's blanket allegations that certain non-Board member Defendants receive reimbursement for travel expenses or other unspecified compensation for their service, *see* Compl. ¶ 21, surely do not meet the standard of providing more specificity than required to survive an ordinary motion to dismiss necessary to state a claim. *See In re Huron*, 971 N.E.2d at 1080.

corporate expenditures were in furtherance of Fraternity business. *See e.g.*, Compl. ¶ 202 (alleging the "Constitutional Convention" resulted in "an approximate $750,000 loss to the Fraternity"); *id*. at ¶ 203 (alleging the Southern Region was run into approximately $250,000 in debt).

In the absence of allegations of self-dealing, personal enrichment, and diversion of corporate assets, Plaintiff has not plausibly alleged that Defendants lacked independence or were otherwise "interested" directors. *See In re Huron*, 971 N.E.2d at 1082. Plaintiff attempts to cure his deficient pleading with a strategically worded allegation that Defendant Daryl Parks "diverted the Fraternity's corporate assets" of members' contact information in connection with a personal campaign for state senate. Compl. ¶¶ 207-08, 238. But that doesn't change the outcome because the Complaint fails to allege this was done for financial gain or there are any Fraternity policies disallowing such behavior. *See In re Huron*, 971 N.E.2d at 1082.[8]

Plaintiff's unauthorized conduct theory also fails because it is untethered to relevant provisions in the Fraternity's Governing Documents, if any, and is otherwise lacking in factual support. Plaintiff alleges the following Board actions lacked authority under the Fraternity's governance framework: the September 2025 Tax Directive; the 2024 "Constitutional Convention;" using the Fraternity's communication channels for non-Board business; and appointing a disbarred attorney to conduct internal investigations. *See* Compl. ¶¶ 233-34, 238. Yet, with the exception of the "Constitutional Convention" allegations, the Complaint fails to identify the specific provisions prohibiting such conduct. That is because none exist.

Plaintiff's "Constitutional Convention" claim is particularly flawed because it rests on a characterization contradicted by the Complaint's exhibits. Although the Complaint repeatedly

---

[8] Moreover, this allegation, supported by an undated text message purportedly from Defendant Daryl Parks asking for campaign support, is wholly insufficient to state particularized facts establishing a claim. Compl. Ex. 25.

refers to the event as the "Constitutional Convention" (*see e.g.*, Compl. ¶¶ 198, 201-02, 213, 234), the notice attached to the Complaint states the General President convened a "Special Convention." Compl. Ex. 24 at p. 1. Plaintiff cannot rebrand a "Special Convention" as a "Constitutional Convention" merely because constitutional amendments were among the matters to be considered and this new description better suits his claims. *Id.* The Fraternity's Constitution and By-Laws expressly authorize Special Conventions. Not only does Plaintiff fail to address these provisions, he does not allege they were violated either.

Likewise, Plaintiff's assertion that Defendant Howard filed a retaliatory lawsuit in violation of the Whistleblower Policy is wholly conclusory, failing to put forth facts describing the specific basis for the lawsuit or identifying the parties. *See* Compl. ¶ 237.[9] Plaintiff is therefore left with nothing more than the conclusory assertion that Defendants "face[] a substantial likelihood of personal liability," Compl. ¶¶ 233-39, which is also insufficient to call into question their independence or disinterestedness. *Sherman,* 911 N.E.2d at 390.

Plaintiff's wrongful refusal theory fares no better. In order to sufficiently state a claim that a director's failure to act creates reasonable doubt as to his impartiality, "the plaintiff must establish that (1) the directors utterly failed to implement any reporting or information system or controls; or (2) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *In re Huron*, 971 N.E.2d at 1083 (citations and quotation marks omitted). The "utter failure" to ensure reasonable systems exists is the necessary showing of a lack of good faith to establish demand futility. *Id.*

[9] The same can be said for Plaintiff's passing references to nonexistent lawsuits allegedly threatened against him and other Fraternity members. *See e.g.*, Compl. ¶ 182.

Again, Plaintiff's own allegations undercut his position. Plaintiff endorses the existence of the Fraternity's reporting systems and controls while also admitting that the Board implemented them upon request. *See e.g.*, Compl. ¶ 217 (acknowledging an investigator was appointed by the Board in response to Plaintiff's claims). Furthermore, Plaintiff does not challenge the adequacy of the Fraternity's reporting systems. He simply alleges that Defendants failed to implement them properly. Even if that were true, that is still not enough because only an utter failure to "assure a reasonable [] system exists" can establish the lack of good faith necessary to prove demand futility; and Plaintiff falls well short of that showing. *In re Huron*, 971 N.E.2d at 1083; *see also id.* at 1084 (no demand futility where the plaintiff acknowledged the reporting system was in place, but alleged it failed in this case).

Moreover, Plaintiff's sweeping 'failure to investigate' allegations rest on pure speculation because, as supported by the Complaint exhibits, the Fraternity is not required to keep Plaintiff abreast of investigation developments after his initial report. *See e.g.*, Compl. ¶ 84. Pursuant to the Fraternity's Governing Documents, the details of reports and internal investigations are required to remain confidential. *See e.g.*, Compl. Ex. 6 at p. 2 (Whistleblower Policy providing that all reports and investigations "shall be kept confidential"); Compl. Ex. 4 at p. 11 (Membership Manual advising that, in matters involving alleged sexual misconduct, only "[t]he alleged victim and the accused will be appraised of the investigation and its outcome."). It follows, then, that Plaintiff would not have been informed about the initiation, progress, or conclusion of any investigation after lodging his multitude of complaints. This cannot plausibly support an inference that no investigation took place at all.

Worse than seeking "to equate a bad outcome with bad faith," Plaintiff seeks to equate his lack of insight into an outcome with bad faith. *In re Huron*, 971 N.E.2d at 1084. Indeed, the

Complaint asks this Court to infer bad faith because Plaintiff was not privy to information the Governing Documents expressly require be withheld from him. This should not stand. Accordingly, Plaintiff cannot satisfy his burden to create reasonable doubt in Defendants' disinterest and independence as Board members.

ii. *Exercise of Business Judgment*

Plaintiff also cannot clear the hurdle of rebutting the business judgment rule. To sufficiently overcome the presumption of valid business judgment, a plaintiff must establish that board decisions were "[not made] on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest." *In re Huron*, 971 N.E.2d at 1085. Plaintiff's claims once again cannot make the requisite showing.

To start, the Complaint does not assert the traditional claims of fraud, bad faith or self-dealing capable of rebutting the presumption that the Board exercised sound business judgment in good faith. *Id*. Plaintiff's allegations amounting to his dissatisfaction with the way the Board performed its duties cannot create conduct "so egregious on its face" sufficient to establish bad faith. *Sherman*, 911 N.E.2d at 393; *see e.g.*, Compl. ¶ 229 (Plaintiff listing his grievances with the way the Board responded to his letters). The Complaint also does not allege that Defendants engaged in illegal conduct themselves or completely failed to obtain the material information needed to make Board decisions. He only avers that, in his opinion, Defendants' behavior was inadequate, which is not enough to state a claim. *See Stamp v. Touche Ross & Co.*, 636 N.E.2d 616, 621-22 (Ill. App. 1st Dist. 1993).

Simply put, Plaintiff has not alleged facts that adequately attack the presumption of valid business judgment —"possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Huron*, 971 N.E.2d at 1083 (citation omitted). Accordingly,

the Court should dismiss Plaintiff's Complaint for failure to establish the requisite demand futility to pursue a derivative action.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

By invoking this Court's diversity jurisdiction, the Complaint is governed by federal procedural law and state substantive law. *See Sopkin*, 746 F. App'x at 161, n. 7 (*citing Anand v. Ocwen Loan Serv., LLC*, 754 F.3d 195, 198 (4th Cir. 2014)). As discussed more thoroughly below in Section III, this Court should apply the choice-of-law rules of Maryland to determine which state's law will govern each claim. *See Ark. Nursing Home*, 460 F. Supp. 3d at 643. Because statutes of limitation are treated as procedural rules under Maryland law, the Court should apply Maryland's limitation period to each claim regardless of whether it is ultimately governed by Illinois's substantive laws.

All claims in the Complaint are subject to Maryland's general three-year statute of limitations for civil actions. Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues"). There can be no dispute Counts I-IX are civil in nature nor that Count X for injunctive relief is premised on these civil causes of action. *See Gen. Ins. Co. of Am. v. Walter E. Campbell Co., Inc.*, 241 F. Supp. 3d 578, 595 (D. Md. 2017) (courts must look to the underlying cause of action to determine which Maryland statute of limitations applies to claims for declaratory judgment). This means that any allegations concerning conduct prior to June 25, 2023 are time barred.

The three-year limitations period disposes of the vast majority of the Complaint's factual allegations. Plaintiff's tax compliance claims rest on conduct occurring in 2015, 2018, and 2021. *See* Compl. ¶¶ 57-68, 76. His hazing and sexual misconduct allegations are based on events in 2014, 2015, 2018, and 2019, while his Thirty-Sixth General Presidential Election allegations rely

on actions taken from 2017 to 2020. *See id*. at ¶¶ 85-91, 97-113. Plaintiff's other election and misconduct claims, as well as his failure to investigate claims, allege actions taking place in 2022 through early June 2023. *See id*. at ¶¶ 115-25, 127-36, 156-65, 167-68. Suffice to say, because they rely on these untimely events, the entirety of Plaintiff's breach of fiduciary duty and corporate governance claims (Counts I-III and IX), as well as large portions of his contract and declaratory judgment claims (Counts IV, VII, and X) are time-barred.

Maryland's "discovery rule" does not save these pleading defects. Under the "discovery rule," a statute of limitations will be tolled until the time a plaintiff knows or reasonably should have known of the wrong. *See Tobacco Tech., Inc. v. Taiga Int'l N.V.*, 388 F. App'x 362, 373 (4th Cir. 2010). The Complaint is replete with allegations that Plaintiff was affirmatively aware of the wrongs alleged therein long before June 25, 2023. *See e.g.*, Compl. ¶¶ 63, 68 (alleging the Fraternity had "actual notice of the tax compliance issue since at least March 2018" and was made aware again in 2021); *id*. at ¶¶ 85-86, 89, 91 (claiming the Fraternity was put on notice—by Plaintiff, unnamed individuals, or otherwise—of alleged hazing and sexual misconduct in 2014, 2015, 2018, and 2019); *id*. at ¶ 158 (alleging the Fraternity had "direct notice" of other misconduct claims in March 2023). Plaintiff cannot retreat from the temporal lines drawn in the sand by his own Complaint and revive his claims pled on discrete acts occurring years earlier.

Nor can Plaintiff avail himself of the "adverse interest exception" to the discovery rule because these same allegations establish he imputed his knowledge on the Fraternity's agents contemporaneously. The "adverse interest exception" could only apply if Plaintiff sufficient pled that the Board "totally abandoned" his interests as a Fraternity member and acted for its own purpose. *Tobacco Tech.*, 388 F. App'x at 373. He cannot. Because Plaintiff cannot rebut the presumption that the Board exercised valid business judgment in connection with the conduct

challenged in the Complaint, he also cannot meet this burden to toll the three-year limitations period. *See Id*. at 373 (the Fourth Circuit explaining that, because it had just concluded the alleged interested-director transaction was reasonable, "[the plaintiff] cannot meet its burden to show that the adverse interest exception applies in this case.").

Accordingly, the Court should dismiss as time-barred Counts I-III and IX, completely, and the substantial amounts of Counts IV, VII, and X relying on pre-June 25, 2023 conduct.

## III. CHOICE-OF-LAW ANALYSIS REQUIRES APPLICATION OF ILLINOIS AND MARYLAND LAW

Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine which state's laws will govern each claim. *Ark. Nursing Home*, 460 F. Supp. 3d at 643. Under Maryland choice-of-law rules, the applicable law depends on the nature of each claim. *See id*. Maryland courts apply the "internal affairs doctrine" to claims bearing on the relationship between a corporation and its officers, directors, and shareholders. *Id*. Thus, the "internal affairs doctrine" determines which state's laws will apply to Counts I, II, III, V, VIII, IX, and X—all of which are rooted in allegations of corporate misconduct. For contract-based claims, including unjust enrichment, Maryland courts follow the rule of *lex loci contractus* and apply the law of the state where the contract was formed, unless the contract has a choice-of-law provision. *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019). Therefore, the terms of the contract will determine which state's law governs Counts IV and VII.

### A. <u>"Internal Affairs Doctrine" Requires Application of Illinois Law</u>

Under the "internal affairs doctrine," courts must apply the law of the state of incorporation to corporate affairs claims. *Ark. Nursing Home*, 460 F. Supp. 3d at 643. It is undisputed that that the Fraternity is incorporated in Illinois. *See* Compl. ¶ 20 (admitting the Fraternity "is an Illinois corporation"). Accordingly, Plaintiff's corporate affairs claims should be governed by Illinois law.

Maryland courts have applied the law of the state of incorporation to the same type of corporate affairs claims that Plaintiff asserts in Counts I-III and VIII. *See Goodwill Indus. of Lane & S. Coast Ctys. v. Goodwill Indus. Int'l, Inc.*, 242, SEPT. TERM,2024, 2025 WL 2684364, at *13 (App. Ct. Md. Sept. 19, 2025) (applying Massachusetts law to breach of fiduciary claim); *Ark. Nursing Home*, 460 F. Supp. 3d at 643 (applying Delaware law to multiple breach of fiduciary duty claims in a derivative action); *Ives v. Advanced Broadband Sols., Inc.*, Civ. Action No. DKC 2003-0848, 2004 U.S. Dist. LEXIS 968, at *13-14 (D. Md. Jan. 23, 2004) (applying Virigina law to books and records inspection claim). Furthermore, because Maryland courts consider claims for waste of corporate assets and ultra vires to be intertwined with corporate affairs, Illinois law should also apply to Counts VI and IX. *See Forrester Constr. Co. v. Forrester*, Case No. 486728-V, 2021 Md. Cir. Ct. LEXIS 15, at *13 (Md. Cir. Ct. Nov. 2, 2021) (assessing a waste of corporate assets claim in the context of its effect on the corporation's operations); *Steele v. Diamond Farm Homes Corp.*, 211 A.3d 411, 418-19 (Md. 2019) (explaining that ultra vires acts are those within the express or implied powers of a corporation).

Plaintiff's civil conspiracy claim in Count V is based almost entirely on Plaintiff's allegations that the Board conspired to conceal fiduciary misconduct, interfere with corporate elections, avoid derivative accountability, and preserve their positions within the organization. *See* Compl. ¶¶ 282-86. It therefore derives from alleged breaches of corporate duties and Illinois law should apply. *See Ark. Nursing Home*, 460 F. Supp. 3d at 647-48 (explaining there is no underlying tort for civil conspiracy and viewing it in the context of plaintiff's other complaint claims). Similarly, because Count X seeks declarations concerning the validity of corporate elections, board directives, amendments to governing documents, authority of officers, and other alleged corporate misconduct (*see* Compl. ¶ 324), it should also be governed by Illinois law. *See id*. at 643.

### B. *Lex Loci Contractus* Requires Application of Maryland Law

For contract claims, Maryland uses the principle of *lex loci contractus* and applies the law of the state in which the contract was formed, unless there is a choice-of-law provision in the contract. *State Auto. Mut. Ins. Co.*, 422 F. Supp. 3d at 961. It is well-established Maryland law that, even if it is executed elsewhere, courts should honor a contract's choice of which state's laws govern its rights. *See e.g.*, *Padco Advisors, Inc. v. Omdhal*, 179 F. Supp. 2d 600, 605 (D. Md. 2002). Courts should only set aside a contract's choice-of-law provision if (i) the chosen state has no substantial relationship to the parties and there is no reasonable basis for its choice or (ii) applying that state's laws would be contrary to public policy. *See Three M Enters. v. Tex. D.A.R. Enters.*, 368 F. Supp. 2d 450, 457 (D. Md. 2005). Neither circumstance is present here. Accordingly, because the Fraternity's Governing Documents expressly contemplate compliance with Maryland law, its contract claims should be governed by Maryland law.

The Board Governance Manual memorializes the Fraternity's intention for its policies and Board decisions to be governed by Maryland law through express contractual provision. *See* Compl. Ex. 3 at p. 11 (providing that the Board shall determine the policies of the Fraternity subject to "[the] rules and regulations of the State of Maryland" and that the Fraternity's policies have been written consistent with "the laws of the State of Maryland"). It also dictates that any contracts between the Fraternity and third-party contractors or vendors are subject to the laws of Maryland. *See id*. at p. 19. None of the other Governing Documents contradict this choice by the Fraternity.

While the Constitution and By-Laws suggest it was executed in Indiana (*see* Compl. Ex. 2 at 14), the Court should honor the Fraternity's choice of governing law because it has a substantial relationship with the State of Maryland and applying Maryland law will not run afoul public policy.

The Fraternity has been headquartered in Maryland for the last thirty-five (35) years;[10] and Plaintiff has conceded that this Maryland headquarters is the Fraternity's principal place of business. *See* Compl. ¶ 20. Thus, there can be no doubt that Maryland law should apply under the most significant relationship test, especially considering Plaintiff decided to file his Complaint in the state. *See Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 372-73 (Md. Spec. App. 2006) (affirming the trial court's enforcement of Maryland law choice-of-law provision against a Delaware corporation where Maryland was the corporation's principal place of business and the plaintiff filed suit in Maryland). Moreover, the Fraternity's long-standing operations in Maryland refute any notion that Indiana has a materially greater interest in determining the claims asserted against the Fraternity. *See e.g.*, *Three M Enters.*, 368 F.Supp.2d at 459 (finding Maryland had the greater interest in resolving claims against a Maryland corporation related to a franchise that was operating within the state). Accordingly, Maryland law should be applied to Plaintiff's contract claims in Counts IV and VII.

## IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS

### A. Counts I, II, III, and VI Should Be Dismissed Because Plaintiff Cannot Rebut the Business Judgment Rule

Plaintiff brings claims for breach of fiduciary duty (Count I), breach of oversight duty / failure of internal controls (Count II), aiding and abetting breach of fiduciary duty (Count III), and waste of corporate assets (Count VI), respectively resting on allegations of fiduciary mismanagement, knowing assistance the same, and corporate waste arising from election-related conduct, purported failures of investigation and oversight, tax-compliance decisions, a 2024

---

[10] Shannon D. Murray, *Nation's oldest, largest black fraternity moves to Baltimore Alpha Phi Alpha, formerly in Chicago, buys Goucher Mansion*, THE BALTIMORE SUN, (Aug. 5, 1991), https://www.baltimoresun.com/1991/08/05/nations-oldest-largest-black-fraternity-moves-to-baltimore-alpha-phi-alpha-formerly-in-chicago-buys-goucher-mansion/?clearUserState=true.

"Constitutional Convention," the Southern Region deficit, and alleged personal use of fraternity resources. *See* Compl. ¶¶ 250-52, 260-66, 270-74, 290-93. As already discussed, the Complaint puts forth no facts to support an inference that Defendants did not make informed judgments or otherwise act in the best interest of the Fraternity. *See supra* Section I.B at 15. Nor does it allege "any fraud, illegality, conflict of interest or bad faith on the part of [Defendants]." *Stamp*, 636 N.E.2d at 622. Accordingly, Defendants are protected by the business judgment rule. *See id*. at 622-23.

Even assuming, *arguendo*, Defendants were not protected by the business judgment rule, Plaintiff's speculative Complaint asserting more than thirty (30) allegations "upon information and belief" cannot be viewed as "a legally and factually sufficient complaint." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1172 (Ill. App. 2d Dist. 2004).

***Breach of Fiduciary Duty.*** Count I alleges that Defendants breached their fiduciary duties to the Fraternity by failing to address alleged tax and risk-management issues, improperly influencing the 2024 General Election, refusing to investigate alleged misconduct, retaliating against Plaintiff's complaints, and misusing Fraternity assets and authority. *See* Compl. ¶¶ 250-252. In order to state a claim for breach of fiduciary duty in Illinois, a plaintiff must prove (1) that a fiduciary duty existed; (2) that a defendant breached that duty; and (3) that breach proximately caused the injury plaintiff complains of. *Elleby*, 164 N.E.3d at 625. A claim cannot survive a motion to dismiss when it is based on "mere conclusions of law or fact[s] unsupported by the [complaint]." *Capitol Indem. Corp. v. Stewart Smith Intermediaries*, 593 N.E.2d 872, 875 (Ill. App. 1st Dist. 1992).

Defendants do not dispute that, by virtue of their agency relationship with the Fraternity, there is a fiduciary duty owed. *See id*. at 124. However, Plaintiff's allegations that Defendants

were impartial in their decision-making amount to a recitation of the legal standard without providing specific facts in support thereof. That is not enough to establish a breach occurred.

Plaintiff spends pages upon pages alleging Defendants failed to respond to misconduct reports and complaints; however, Plaintiff's lack of knowledge as to Defendants' responsive actions does not mean they did not occur. *See supra* Section I.B at 14. Plaintiff was permissibly excluded from the investigative process pursuant to the Fraternity's Governing Documents and he cannot use his ignorance to claim Defendants breached any fiduciary duty. *See Elleby*, 164 N.E.3d at 626 (finding plaintiff failed to state a claim for breach of fiduciary duty by alleging defendants were "freezing" her out of corporate operations to which she was not entitled to be involved).

Plaintiff's unauthorized action claims are equally ineffective because the Complaint is devoid of allegations that such actions were without a legitimate business purpose. Thus, they are also incapable of stating a claim for breach of fiduciary duty. *See id*. at 627 (affirming dismissal of breach of fiduciary claim because there was "no allegation that [the unauthorized and wasted expenditures] did not have a legitimate business purpose.").

***Aiding and Abetting Breach of Fiduciary Duty.*** Count III simply alleges that Defendants were aware of the breaches asserted in Count I and provided knowing assistance thereto. *See* Compl. ¶¶ 270-74. But because Plaintiff has failed to state a claim for breach of fiduciary duty, his claim for aiding and abetting is dead in the water. *See e.g., Johnson v. Matrix Fin. Servs. Corp.*, 820 N.E.2d 1094, 1106 (Ill. App. 1st Dist. 2004) (finding where breach of fiduciary duty failed, "[c]onsequently, plaintiffs' allegations [of inducement] to breach that duty also fails.").

***Breach of Duty of Oversight / Failure of Internal Controls.*** Count II alleges that Defendants consciously disregarded known compliance and governance risks by failing to maintain reasonable oversight systems, investigate reported misconduct, or respond to warning

signs regarding tax compliance, member-safety issues, election integrity, and whistleblower retaliation, thereby causing financial, legal, and reputational harm to the Fraternity. *See* Compl. ¶¶ 260-66. Illinois does not recognize a standalone claim for breach of oversight duties; but rather, only as a specific theory of breach of fiduciary duty under which a plaintiff must show an "utter failure" of defendants to ensure the mere existence of reasonable corporate controls systems. *In re Huron*, 971 N.E.2d at 1083. Such failure is a necessary predicate for this type of claim. *Sherman*, 911 N.E.2d at 394.

As explained earlier, Count II fails because it reflects a mere disagreement with the Board's response to reported concerns, not a plausible allegation that the Board lacked oversight systems. *See supra* Section I.B at 14. Plaintiff alleges that Defendants ignored, mishandled, or inadequately acted on information generated through the Fraternity's reporting systems and controls, while also admitting their existence and use. *See id.* This is fatal to Plaintiff's claim. In the face of Plaintiff's admission that the Fraternity maintained reporting systems and controls, all of his other allegations are rendered "[in]consistent with the idea that directors have 'utterly failed' to implement reporting systems." *Sherman*, 911 N.E.2d at 395. Such allegations are insufficient to overcome "possibly the most difficult theory in corporation law" and state a claim for director oversight liability. *Id.* at 394.

***Waste of Corporate Assets.*** Count VI alleges corporate waste based on expenditures for the 2024 "Constitutional Convention," the Southern Region deficit bailout, retention of a purportedly unqualified investigator, and use of Fraternity resources for personal political campaign, all of which allegedly conferred little or no benefit on the Fraternity. *See* Compl. ¶¶ 290-93. Again, such claims rest on the same facts alleged in Counts I and III, and thereby fall with them for the same reasons. Illinois courts have rarely addressed corporate waste directly, and those

that have analyzed such claims together with the business judgment rule. *Murchie v. Sorensen*, 2015 IL App (1st) 133719-U, ¶ 28 (*citing In re Huron*, 971 N.E.2d at 1085). As articulated above, in the absence of facts establishing bad faith, Plaintiff cannot meet the high pleading standard to rebut the presumption of the business judgment rule. *See supra* Section I.B at 15.

Accordingly, Counts I, II, III, and VI should be dismissed with prejudice.

### B. <u>Counts IV and VII Should Be Dismissed Because There is No Breach of an Express Contract</u>

Count IV alleges that Defendants breached the Fraternity's Governing Documents and customs by improperly interfering in elections, violating election procedures, convening the 2024 "Constitutional Convention," allowing Defendant Daryl Parks to remain General Counsel beyond his term, retaliating against whistleblowers, and misusing Fraternity resources for political purposes. *See* Compl. ¶¶ 278-79. Under Maryland law, plaintiffs alleging a breach of contract "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (emphasis in original). Conclusory statements and general averments are not enough to survive a motion to dismiss. *See id*.

As discussed above, the Complaint wholly fails to provide any facts to support that the challenged conduct was expressly prohibited under the Fraternity's Governing Documents. *See supra* Section I.B at 12-13. Indeed, the documents attached to the Complaint directly support that the Board had express authority to convene a "Special Convention" and the Fraternity was not required to only use barred attorneys, or attorneys at all, in its investigations. *See* Compl. Ex. 2 at pp. 19, 25 (detailing authority of General President to convene a "Special Convention"); Compl. Ex. 4 at pp. 66 (providing the incident response team need only be comprised of "a representative from the Office of the General Counsel, who shall be the Chairman of the RRT, a member of the

Regional Grievance and Discipline Committee, an Alumni Brother and/or college Brother (if available from the Region).”). Where a decision is made in conformity with a corporation’s own policies, there is no illegality afoot, and courts should not interfere with internal corporate decisions. *Sadler v. Dimensions Healthcare Corp.*, 836 A.2d 655, 673 (Md. 2003).

Plaintiff’s passing references to the Fraternity’s longstanding customs do not save this claim. *See e.g.*, Compl. ¶¶ 49, 56. It is well established Maryland law that when clear and unambiguous express terms of a contract are present, “they cannot be varied or contradicted” by allegations of customs. *Travelers Ins. Co. v. Hermann*, 140 A. 64, 70 (Md. 1928). Thus, left with nothing more than “conclusory statements and general averments,” the Complaint fails to state a claim for breach of contract. *Polek*, 36 A.3d at 417.

Similarly, because Count VII challenges the same valid express contracts at issue in Count IV (*see* Compl. ¶¶ 289-93), it cannot be brought as a standalone claim under Maryland law. *Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000).

Accordingly, Counts IV and VII should be dismissed with prejudice.

### C. Count V Should Be Dismissed Because Defendants Acted Within the Scope of Their Organizational Duties

Count V alleging the Defendants’ widespread conspiracy to conceal the Fraternity’s wrongdoings (*see* Compl. ¶ 282) also fails because, under Illinois law, conspiracy liability cannot be extended to corporate representatives acting in their organizational capacity. Under Illinois’s intra-corporate conspiracy doctrine, an agent acting within the scope of his organizational duties “cannot conspire with its principal or with other agents of that principal.” *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 803 (citations omitted); *see also Bilut v. Nw. Univ.*, 692 N.E.2d 1327, 1332 (Ill. App. 1st Dist. 1998) (“As a general rule of law, principals and agents are

legally incapable of conspiring with one another because the acts of an agent are considered the acts of his principal.").

Plaintiff's civil conspiracy claims are essentially an attempt to get his otherwise deficient fiduciary duty claims to stick. Because all the misconduct alleged in the Complaint were actions performed within the scope of their organizational duties, Defendants cannot be held liable for a conspiracy. *See Liqui-Box Corp.*, 449 F. Supp. 3d at 804 ("There can [*only*] be a conspiracy where the agent's interests diverge from those of the principal, and the agent at the time of the conspiracy is acting beyond the scope of his authority or for his own benefit, rather than [for] that of the principal.") (emphasis added) (citations omitted). Accordingly, Count V should be dismissed with prejudice.

**D. <u>Count VIII Should Be Dismissed Because Plaintiff Has No Voting Rights</u>**

Plaintiff claims he has a right to examine and copy the Fraternity's books and records as a member in good standing. Compl. ¶ 302. However, under Illinois law, only voting members have this right. 805 ILCS 105/107.75(a) states, in relevant part, that "[a]ny ***voting member*** shall have the right to examine, in person or by agent, at any reasonable time or times, the corporation's books and records." (emphasis added). Plaintiff does not have such right as a general member of the Fraternity as his voting rights as a general member are no different than the 290,000 initiated members and 70,000 active members of the Fraternity but clearly distinguishable from the fourteen voting members of the Fraternity's Board as the Plaintiff identified in his complaint. *See* Compl. ¶ 53; Compl. Ex. 2 at 14.[11] Accordingly, the Court should dismiss Count VIII with prejudice.

[11] *See also* ALPHA PHI ALPHA FRATERNITY, INC., https://apa1906.net/, (last visited August 14, 2026).

### E. **Count IX Should Be Dismissed Because Defendants' Actions Were Within Corporate Authority**

"*Ultra vires* acts are beyond the scope of power allowed or granted by a corporate charter or by law." *Wolfson v. Dugout Northbrook, LLC*, 277 N.E.3d 446, 453, n.4 (Ill. App. 1st Dist. 2025) (citation omitted). However, the actions on which Plaintiff bases his claims are all actions the corporation had power to perform.

As to the "Constitutional Convention," Plaintiff does not allege that the Fraternity lacked corporate authority to hold meetings, amend governing documents, spend money on conventions, or discuss governance reforms. Section 1.1 of the By-Laws details the Duties of the General President. Compl. Ex. 2 at p. 19. Section 1.1.1 states, "[the General President] shall preside over the General Convention or any Special Convention that may be called." *Id*. Nowhere in the By-Laws is a Special Convention defined, and there is certainly nothing prohibiting a "Constitutional Convention." Plaintiff also alleged that the September 2025 Tax Directive was unwise because back taxes and penalties existed and voluntary disclosure was not pursued. However, the fact that Plaintiff disagrees with the Board's strategy does not transform its decisions into *ultra vires* acts. Moreover, Plaintiff's reliance on longstanding custom shows no prohibition of the Board's power to influence the election.

At bottom, holding a convention, addressing tax compliance, and managing organizational affairs are all actions that fall within the business judgment rule. Even assuming every decision made was mistaken, expensive, or unpopular, this does not make the actions ultra vires. Plaintiff's allegations confuse actions taken allegedly contrary to internal procedures with ultra vires acts. Plaintiff's allegations confuse allegedly improper corporate action with *ultra vires* conduct. An act does not become *ultra vires* merely because Plaintiff challenges the Board's authority, procedure, or judgment; it must be beyond the corporation's legal power to perform. None of the

challenged actions meets that standard. Accordingly, Count IX should also be dismissed with prejudice.

### F. Count X Should Be Dismissed Because There Is No Live Controversy

The elements of declaratory judgment action are "(1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Travelers Indem. Co. of Am. v. Townes of Cedar Ridge Condo. Ass'n,* 207 N.E.3d 361, 364 (Ill. App. 3d Dist. 2022) (*citing Adkins Energy, LLC v. Delta-T Corp.*, 806 N.E.2d 1273, 1275 (Ill. App. 2d Dist. 2004)). Importantly, "[a] declaratory judgment action is not a vehicle for a declaration of nonliability for past conduct." *Id.*

Plaintiff's allegations in support of a declaratory judgment focus on the 2025 September Tax Directive, the past General Presidential Election, Defendant Daryl Parks' alleged access to Fraternity resources, and the 2024 "Constitutional Convention"—all past, not present or future, conduct. *See* Compl. ¶ 324. A declaratory judgment is intended to define the parties' present or future legal rights, not to declare liability for completed acts. *See e.g.*, *RSA Properties Mission Hills, P.C. v. Mission Hills Homeowners Assn.*, 264 N.E.3d 1041, 1051 (Ill. App. 1st Dist. 2024) (affirming dismissal where a declaratory judgment "would serve no practical purpose" because no future rights were at issue). Accordingly, Count X should be dismiss with prejudice.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court grant its motion to dismiss and all claims asserted in the Complaint with prejudice.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Sydney Hargrove*

Sydney Hargrove (D. Md. Bar No. 30951)
Jarrod Loadholt (*pro hac vice forthcoming*)
**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Avenue, NW, Suite 800
Washington, DC 20036
Phone: (202) 971-4064
Fax: (202) 408-5146
shargrove@taftlaw.com
jloadholt@taftlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, a copy of the foregoing was filed with the Court using the CM/ECF system and notification of such filing will be sent electronically by the CM/ECF system to all counsel of record.

Jasmine G. Chalashtori
K Street NW, Suite 400 South
Washington, DC 20006
(202) 857-4410
Jasmine.Chalashtori@wbd-us.com

James E. Connelly
1331 Spring St. NW, Suite 1400
Atlanta, GA 30309
(404) 888-7496
James.Connelly@wbd-us.com

Andre M. Davis
Chukwukpee Nzegwu
100 Light St, 26th floor
Baltimore, MD 21202
(410) 545-5861
Chukwukpee.Nzegwu@wbd-us.com

*Counsel for Plaintiff*

*/s/ Sydney Hargrove*
Sydney Hargrove