**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Gregory S. Parks, J.D., Ph.D., derivatively on behalf of Alpha Phi Alpha Fraternity, Incorporated,** | |
| ***Plaintiff*,** | |
| **v.** | |
| **Willis L. Lonzer, III, *et al.*** | **Case No.: 1:26-cv-02544-SAG** |
| ***Defendants*,** | |
| **and** | |
| **Alpha Phi Alpha Fraternity, Incorporated,** | |
| ***Nominal Defendant*.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 6

A. Maryland Law, Not Illinois Law, Governs Counts I-III, V, VI, And VIII-X ..... 6

B. Plaintiff Has Standing To Bring Derivative Claims. ..... 10

C. Demand Was Made And Refused. ..... 13

D. In The Alternative, Demand Was Excused. ..... 17

E. Plaintiff's Claims Are Not Time Barred. ..... 20

F. Each Of Plaintiff's Claims Is Sufficiently Pled. ..... 23

i. The Business Judgment Rule Does Not Bar Counts I, II, III, And VI. ..... 23

ii. Defendants Have Waived Any Challenge To Count III Beyond Their Attack On Count I. ..... 26

iii. Plaintiff States A Claim For Breach Of Contract (Counts IV And VII) ..... 26

iv. The Intracorporate Conspiracy Doctrine Does Not Bar Count V. ..... 28

v. Plaintiff States A Claim for Books-And-Records Inspection (Count VIII). ..... 28

vi. The Complaint States A Claim For *Ultra Vires* Acts (Count IX) ..... 28

vii. The Complaint States A Claim for Declaratory Judgment (Count X). ..... 29

G. Any Dismissal Should Be Without Prejudice. ..... 30

V. CONCLUSION ..... 30

## TABLE OF AUTHORITIES

**Cases**

*Am. Nat'l Bank v. Richoz*,
545 N.E.2d 550 (Ill. App. 2d Dist. 1989) .......... 14

*Applestein v. Royal Realty Corp.*,
181 Md. 171 (1942) .......... 27

*Bender v. Schwartz*,
172 Md. App. 648 (2007) .......... 13, 15, 16

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*,
598 F. Supp. 3d 348 (D. Md. 2022) .......... 28

*Boland v. Boland*,
423 Md. 296 (2011) .......... *passim*

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) .......... 17

*Caulfield v. Packer Group, Inc.*,
56 N.E.3d 509 (Ill. App. 1 Dist. 2016) .......... 14

*CX Reinsurance Co. Ltd. v. Leader Realty Co.*,
219 F. Supp. 3d 542 (D. Md. 2016) .......... 20

*De Simone v. VSL Pharms., Inc.*,
133 F. Supp. 3d 776 (D. Md. 2015) .......... 6

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) .......... 9

*Elleby v. Forest Alarm Serv., Inc.*,
164 N.E.3d 613 (Ill. App. 1st Dist. 2020) .......... 26

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002) .......... 28

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*,
360 Md. 76 (2000) .......... 21

*Froelich v. Erickson*,
96 F. Supp. 2d 507 (D. Md. 2000) .......... 28

*Garnitschnig v. Horovitz*,
48 F. Supp. 3d 820 (D. Md. 2014) .......... 23

*Goodman v. Praxair, Inc.*,
494 F.3d 458 (4th Cir. 2007) ........................................................................................ 20

*Great N. Ins. Co. v. Baltimore Gas & Elec. Co.*,
No. SAG-19-2429, 2019 WL 6732966 (D. Md. Dec. 11, 2019) .............................................. 6

*Hecht v. Resol. Trust Corp.*,
635 A.2d 394 (Md. 2007) ........................................................................................ 10, 21

*Hudson v. Prime Retail, Inc.*,
No. 24-C-03-5806, 2004 WL 1982383 (Md. Cir. Ct. Apr. 1, 2004) ...................................... 23

*In re Huron Consulting Grp., Inc. S'holder Deriv. Litig.*,
971 N.E.2d 1067 (Ill. App. 1st Dist. 2012)........................................................ 17, 19, 20, 25

*In re Mun. Mortg. & Equity, LLC, Sec. and Derivative Litig.*,
876 F. Supp. 2d 616 (D. Md. 2012) ........................................................................................ 7

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)............................................................................................................ 13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941).............................................................................................................. 6

*Kramer v. Liberty Prop. Tr.*,
968 A.2d 120 (Md. 2009) ................................................................................................ 14

*Lacks v. Ultragenyx Pharm., Inc.*,
734 F. Supp. 3d 397 (D. Md. 2024) ........................................................................................ 7

*Levine v. Smith*,
591 A.2d 194 (Del. 1991) ................................................................................................ 15

Liqui-Box Corp. v. Scholle IPN Corp.,
449 F. Supp. 3d 790 (N.D. Ill. 2020) ................................................................................ 28

*Los Angeles City Employees' Ret. Sys. v. Sanford*,
352 A.3d 276 (Del. Ch. 2026)............................................................................................ 19

*Mills v. Esmark, Inc.*,
91 F.R.D. 70 (N.D. Ill. 1981)...................................................................................... 13, 14

*N.A.A.C.P. v. Golding*,
342 Md. 663 (1996) ...................................................................................................... 6, 23

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)............................................................................................................ 23

*Oliveira v. Sugarman*,
226 Md. App. 524 (2016) ... 15

*Polek v. J.P. Morgan Chase Bank, N.A.*,
36 A.3d 399 (Md. 2012) ... 26

*Resol. Trust Corp. v. Hecht*,
818 F. Supp. 894 (D. Md. 1992) ... 23

*Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*,
66 A.3d 963 (Del. Ch. 2013) ... 16, 25

*River Breeze, LLC v. Granholm*,
224 N.E.3d 233 (Ill. App. 2d Dist. 2022) ... 11

*Sadler v. Dimensions Healthcare Corp.*,
378 Md. 509 (2003) ... 25, 27

*Scott v. Caroline Cnty., Maryland*,
No. CV ADC-20-0603, 2020 WL 5653398 (D. Md. Sept. 22, 2020) ... 30

*Sherman v. Ryan*,
911 N.E.2d 378 (Ill. App. 1st Dist. 2009) ... 25

*Solak on Behalf of Ultragenyx Pharm. Inc. v. Welch*,
C.A. No. 2018-0810-KSJM, 2019 WL 5588877 (Del. Ch. Oct. 30, 2019) ... 14

*Staisz v. Resurrection Physicians Provider Grp., Inc.*,
209 N.E.3d 361 (Ill. App. 1st Dist. 2022) ... 11, 12

*Stamp v. Touche Ross & Co.*,
636 N.E.2d 616 (Ill. App. 1st Dist. 1993) ... 17

*Steele v. Diamond Farm Homes Corp.*,
211 A.3d 411 (Md. 2019) ... 29

*Storetrax.com, Inc. v. Gurland*,
895 A.2d 355 (Md. Ct. Spec. App. 2006) ... 7, 8

*Tobacco Tech., Inc. v. Taiga Int'l N.V.*,
388 Fed. App'x 362 (4th Cir. 2010) ... 22

*Toscano v. Koopman*,
148 F. Supp. 3d 679 (N.D. Ill. 2015) ... 13

*Travelers' Ins. Co. v. Hermann*,
140 A. 64 (Md. 1928) ... 27, 28

*S.E.C. v. Pirate Inv. LLC*,
580 F.3d 233 (4th Cir. 2009) .................................................. 26

*Umrani v. Sindhi Ass'n of N. Am.*,
201 N.E.3d 40 (Ill. App. 1st Dist. 2021).................................................. 12

*Valiquet v. First Fed. Sav. & Loan Ass'n of Chicago*,
408 N.E.2d 921 (Ill. App. 1st Dist. 1979).................................................. 14, 19

*Werbowsky v. Collomb*,
766 A.2d 123 (Md. 2001) .................................................. 13

*Wert v. Cohn*,
No. 17 C 219, 2017 WL 3838098 (N.D. Ill. Sept. 1, 2017).................................................. 20

*Wieboldt Stores, Inc. v. Schottenstein,*
94 B.R. 488 (N.D. Ill. 1988) .................................................. 14

*Wolfson v. Dugout Northbrook, LLC*,
277 N.E.3d 446 (Ill. App. 1st Dist. 2025).................................................. 29

**<u>Rules</u>**

Fed. R. Civ. P. 8(a)(2).................................................. 6

Fed. R. Civ. P. 8(d)(2).................................................. 28

Fed. R. Civ. P. 12(b)(6).................................................. 6, 17

Fed. R. Civ. P. 23.1 .................................................. 1, 15

## I. INTRODUCTION

Defendants open their Motion by framing this lawsuit as an effort to "enlist this Court in the internal affairs" of the Fraternity. Mot. at 1. They intend that framing as an indictment; in fact, it is a concession. A derivative action is precisely the vehicle by which a court intervenes in a corporation's affairs and by which it adjudicates breaches of fiduciary duty, self-dealing, *ultra vires* acts, and the subversion of governance rights when those in control will not address them internally. And Plaintiff is precisely the type of representative Rule 23.1 contemplates – a member duly initiated in 2007 who has remained continuously financially active, a Life Member of the Fraternity since 2013, present throughout the period of the challenged conduct, seeking no personal recovery, and pursuing relief that inures exclusively to the benefit of the Fraternity. The Complaint warrants adjudication on the merits, not dismissal at the threshold.

The Complaint alleges – in more than three hundred paragraphs, supported by twenty-six exhibits and verified under penalty of perjury – that Defendants, present and former Fraternity leaders (Directors, Officers, and staff), placed their own personal interests above the Fraternity's welfare. Defendants' effort to recast Plaintiff's well-pled claims as the grievances of a "sore loser" is both factually wrong and legally irrelevant. The Complaint pleads four categories of fiduciary misconduct: (1) unremediated tax exposure; (2) years of failure to investigate and safeguard against sexually predatory conduct and hazing; (3) self-dealing and ongoing mismanagement; and (4) the corruption of the Thirty-Seventh General Presidential Election. Only the last category concerns any election, and even it pleads institutional harm to the Fraternity, not to Plaintiff.

Defendants' Motion should be denied for four reasons. *First*, Plaintiff has standing. Defendants' standing defense rests on importing Illinois law through the internal-affairs doctrine, which in turn rests on the assertion that the Fraternity is an Illinois corporation. It is not. That

Defendants cannot identify their own organization's state of incorporation (or whether it is incorporated at all) underscores the fundamental governance dysfunction the Complaint describes and for which Plaintiff seeks a remedy. Maryland precedent dictates that Maryland law governs due to the Fraternity's significant relationship with this state. Under Maryland law, Plaintiff has standing because he was a member of the Fraternity at all relevant times and remains one. Even if Illinois law applies, Plaintiff is a "voting member" with standing and Defendants' contrary interpretation is both unsupported by the law and nonsensical.

*Second*, demand is satisfied and, alternatively, excused as futile. Plaintiff served two detailed written demands in February 2024 and February 2025, which the Board wrongfully refused through sham review and attempted engagement of a conflicted and disbarred attorney as investigator who did not conduct an investigation. Particularized facts in the Complaint also establish that a majority of the Board is conflicted and/or interested.

*Third*, no claim is time-barred on the face of the Complaint. Defendants' limitations arguments misidentify the accrual date and ignore tolling doctrines.

*Fourth*, as discussed below, the Complaint states a claim on each of its ten counts.

Defendants ask this Court to close the courthouse doors on particularized allegations that the fiduciaries of an international organization have subverted its processes, exposed the organization to liability (including for sexually predatory conduct and hazing), and depleted its treasury while refusing to investigate themselves. Derivative suits exist precisely so those doors remain open. The Motion should be denied.

## II. FACTUAL BACKGROUND

Defendants mischaracterize the Verified Complaint at nearly every turn. They attribute to Plaintiff admissions he never made, quote his demand letters in fragments that invert their

meaning, and deny the existence of allegations that appear verbatim in the pleading. The following examples are illustrative, not exhaustive of Defendants' misrepresentations. The Verified Complaint's allegations, not Defendants' rendering of them, frame this Motion, and the Court should decline Defendants' invitation to test a version of the pleading that Plaintiff did not file.

*First*, Defendants assert that "[i]t is undisputed that the Fraternity is incorporated in Illinois," citing to Paragraph 20 of the Verified Complaint. *See* Compl. ¶ 20. Paragraph 20 admits no such thing. The allegation Defendants quote reads, in full, that the Fraternity "is a corporation registered to do business in Maryland, *having represented to the State of Maryland that it is an Illinois corporation*, with its principal place of business at 2313 St. Paul Street, Baltimore, Maryland 21218." *Id.* (emphasis added). Paragraph 20 alleges that the Fraternity made a representation in a state filing. It does not allege that the representation was correct, and it admits nothing about where (or if) the Fraternity is in fact incorporated.

*Second*, Defendants state that Plaintiff has admitted he is not a voting member, citing to Paragraphs 12, 53, 228, and 231 of the Complaint. *See* Mot. at 2, 8, 9. None of these paragraphs do what Defendants claim. Paragraph 12 pleads Plaintiff's initiation and membership, Paragraph 53 pleads the composition of the Board, Paragraph 231 pleads that a majority of the Board is interested, and Paragraph 228 pleads that Plaintiff "was a member of the Fraternity at all times relevant to the conduct complained of." Compl. ¶¶ 12, 53, 228, 231. None of these paragraphs even reference Plaintiff's voting rights, let alone concede that Plaintiff lacks such rights.

*Third*, Defendants assert that Plaintiff "never demanded the Board bring suit" and "made clear he did not want to initiate a legal process," quoting one sentence from Plaintiff's February 2024 and February 2025 demand letters. Mot. at 10. From the February 2024 demand they quote Plaintiff's hope to "resolve this matter within the Fraternity," and stop there. *Id.* (quoting Compl.

Ex. 22 at 1). But the next sentence of the February 2024 demand asks that the presidential election be acknowledged as corrupted, that the outcome be "overturned, given that it's a legal nullity," that the responsible leadership and staff "be held accountable," and that preventive policies issue, with a deadline of April 1, 2024. Compl. Ex. 22 at 1. The demand also enclosed a 65-page supporting document identifying the derivative harms. Compl. ¶ 179.

From the February 2025 demand, Defendants quote Plaintiff's desire to "resolve this dispute with the Fraternity in 'a brotherly and restorative manner.'" Mot. at 10 (citing Compl. Ex. 26 at 4). Defendants conveniently omit that the February 2025 demand was sent by Plaintiff's counsel who was retained to "consider taking legal action on behalf of the Fraternity" and explained that any action "would be a derivative action brought on behalf of the Fraternity (the nominal defendant) against all of its pertinent directors and certain of its officers." Compl. Ex. 26 at 2, 4-5. Thus, despite Defendants' self-serving and unsubstantiated statements to the contrary, the Board was told, in no uncertain terms, that these claims belonged to the Fraternity and would be prosecuted on its behalf unless the Fraternity acted on them itself.

*Fourth*, Defendants argue that Plaintiff "does not allege his claims were not reviewed by the Fraternity under its governance framework." Mot. at 4. To the contrary, the Complaint avers that Grievance and Discipline Committee Chairman Judge Lewis Nixon "confirmed to Plaintiff that there was never any investigation report produced . . . because there was never any investigation, to his knowledge." Compl. ¶ 191. The Complaint also alleges that Board member Franklin Stacey, Jr. had "never been privy to the McCaskill letter" and knew of no Board member who was. *Id.* ¶ 196. And the Board's three sentence response contained "no findings of fact, no analysis, no identification of the investigator, no description of methodology, and no list of

witnesses or documents reviewed." *Id.* ¶ 194. Thus, Defendants' assertion that Plaintiff does not challenge the Fraternity's review process, (Mot. at 14), is flatly contradicted by the Complaint.

*Fifth*, Defendants claim that the Complaint is "devoid of allegations" of pecuniary interest, and assert without any citation that "Defendants are not employees of the Fraternity nor otherwise have personal financial stakes in its operation." Mot. at 11. The pleading alleges all three. Daryl Parks, Howard, Netherly, and Johnson "each received reportable compensation from the Fraternity beyond reimbursement of actual expenses," as does Harvey. Compl. ¶ 21. Johnson has drawn a salary as Assistant Executive Director since December 2015 and kept the job only because Lonzer intervened when he faced termination. *Id.* ¶¶ 19, 172. Metellus solicited contributions at a private Convention gathering to retire tens of thousands of dollars in his personal debt, and Harvey received his appointment (and the benefits therefrom) "as direct consideration for his public September 2023 endorsement" of Metellus. *Id.* ¶¶ 154, 235. Daryl Parks used the Fraternity's membership lists to solicit campaign "contributions" for his personal political campaign. *Id.* ¶¶ 207-09. Defendants' characterization of the Complaint as "devoid" of pecuniary-interest allegations, (Mot. at 11), is irreconcilable with these well-pleaded facts.

*Sixth*, Defendants argue that Plaintiff "endorses the existence of the Fraternity's reporting systems and controls while also admitting that the Board implemented them upon request," citing Paragraphs 217, 191, 195, and 198. Paragraph 217 in fact alleges that "Defendants Metellus and Harvey caused Past Florida District Director John D. Ellis, Jr., an attorney who had been serially suspended from the practice of law and was ultimately disbarred, to be appointed as the Board's purported investigator." Paragraphs 191, 195, and 218 further allege that Grievance Chair Nixon confirmed no investigation report was produced "because there was never any investigation," that "no genuine investigation had been conducted," and that after Ellis recused, "no other counsel has

been appointed to investigate Plaintiff's second demand." These are not concessions that a reporting system was implemented, they are allegations of a sham investigation.

The Court must take the Complaint's allegations as true, not Defendants' revision of them.

## III. LEGAL STANDARD

Under Federal Rules 12(b)(6) and 8(a)(2), to survive a motion to dismiss, a complaint must contain facts sufficient to state a claim to relief that is plausible on its face, accepting as true all factual allegations therein and drawing all reasonable inferences from those facts in favor of the plaintiff. *See Great N. Ins. Co. v. Baltimore Gas & Elec. Co.*, No. SAG-19-2429, 2019 WL 6732966, at *1 (D. Md. Dec. 11, 2019) (Gallagher, J.) (the standard on a motion to dismiss is "relatively lenient; the complaint need only provide defendants with fair notice of the claims and the grounds for entitlement to relief." (internal quotations omitted)). A plaintiff need not include "detailed factual allegations" and the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id*.

## IV. ARGUMENT

### A. Maryland Law, Not Illinois Law, Governs Counts I-III, V, VI, And VIII-X.

Plaintiff does not dispute that Maryland law supplies the relevant statute of limitations and applies to Counts IV and VII. However, Illinois law does not apply to the remaining counts.

"A federal court sitting in diversity applies the choice-of-law principles of the forum state, in this case, Maryland." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *De Simone v. VSL Pharms., Inc.*, 133 F. Supp. 3d 776, 794 (D. Md. 2015). Maryland courts apply the internal affairs doctrine to claims bearing on the relationship between a corporation and its officers, directors, and members. *See also N.A.A.C.P. v. Golding*, 342 Md. 663, 672-73 (Md. 1996). Under that doctrine, the law of the state of incorporation governs questions concerning the

"rights and responsibilities" arising from the corporate relationship, and determines "the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship" to the dispute. *Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 371–72 (Md. Ct. Spec. App. 2006) (quoting Restatement (Second) of Conflict of Laws § 309 (1971)).

As set forth above, the Complaint alleges that the Fraternity represented to Maryland that it is an Illinois corporation. Compl. ¶ 20. It does not allege that the representation is accurate, and it concedes nothing about the Fraternity's actual state of incorporation. Defendants' choice-of-law argument therefore rests entirely on a mischaracterization of the Complaint.

Far from being "undisputed," Mot. at 18, the Fraternity's corporate status is unsettled across three jurisdictions. Alpha Phi Alpha Fraternity was originally incorporated in the District of Columbia as a domestic nonprofit corporation in 1911. *See* Compl. Ex. 1. The Fraternity has not made any filings in the District of Columbia since 1911 and stands revoked. *See id.*; *see* **Ex. A**, D.C. Entity Information.[1] In 1954, Alpha Phi Alpha Fraternity registered in Illinois as a ***foreign, D.C.*** not-for-profit entity. *See* **Ex. B**, Illinois Entity Information. The Fraternity's own Illinois annual reports, filed between 2020 and 2025, continue to state that the entity is incorporated in D.C., despite its revoked status in D.C. *See* **Ex. C**, Illinois Annual Reports. And in 2003, "Alpha Phi Alpha Fraternity Incorporated" registered in Maryland as a foreign entity, representing, inaccurately, that the entity was formed in Illinois. *See* **Ex. D**, Maryland Entity Information.

Setting aside corporate registrations, the Fraternity has:

---

[1] The court may take judicial notice of matters of public record, including without limitation the Fraternity's qualification, registration, or other corporate status. *See Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 411 (D. Md. 2024); *In re Mun. Mortg. & Equity, LLC, Sec. and Derivative Litig.*, 876 F. Supp. 2d 616, 626, n.7 (D. Md. 2012).

- operated from Baltimore for thirty-five years, (*see* Compl. ¶ 20; Mot. at 21; ECF 15);
- identified Maryland as its state of legal domicile, defined as "the state of incorporation," on at least two decades of federal tax forms executed under penalty of perjury, *see* **Ex. E**, Fraternity Form 990s; **Ex. F**, https://www.irs.gov/instructions/i990.
- represented under penalty of perjury in filings with the United States Patent and Trademark Office that it is a Maryland entity, *see, e.g.*, **Ex. G**, 2026 USPTO Filing.
- represented to its members that its policies, Board decisions, and contracts are governed by Maryland law, (*see* Compl. Ex. 3 at 11, 19).

Given the Fraternity's uncertain corporate status – and setting aside for now the troubling implications of its conflicting (and arguably dishonest) representations regarding that status to state and federal authorities – the Court should ask which state bears the more significant relationship to the issues presented. *Storetrax.com*, 895 A.2d at 371–72. Every factor points to Maryland.

*The needs of the interstate system.* The interstate system is disserved, not served, if an entity may select the law governing its internal affairs according to which of its registrations it chooses to invoke. Defendants' own briefing illustrates the hazard: they invoke the internal affairs doctrine to reach Illinois law where they believe it assists them, and Maryland law elsewhere. Mot. at 18–21. That asymmetry is itself a reason to anchor the analysis in the jurisdiction in which the entity actually operates rather than in the disarray of its filing history.

*The policies of the forum and other states.* Maryland has a substantial interest in the governance of a corporation headquartered there, and which holds property, employs staff, and

solicits and serves its members from there. Illinois, on the other hand, "has no interest in regulating the internal affairs of foreign corporations." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).[2]

*The protection of justified expectations.* Whatever expectations exist, the Fraternity created them, and they all run to Maryland. *See* Mot. at 20 (citing Compl. Ex. 3 at 11, 19 (Board Governance Manual referencing the rules, regulation, and laws of Maryland)). A member who deals with a Baltimore headquartered organization and reads governing documents invoking Maryland law has no reason to suppose that his rights are defined by some other jurisdiction.

*The basic policies underlying the field.* Corporate governance law exists to secure accountability, faithful fiduciary performance, and effective judicial oversight. Those purposes are best served by the law of the jurisdiction where the corporation operates and governs.

*Certainty, predictability, and uniformity.* Maryland alone has maintained a continuous significant relationship with this entity for decades. By applying Maryland law, as specifically selected by the Fraternity in its Governing Documents, the Court avoids having to resolve an unsettled threshold question of whether a charter revoked in 1955 still supplies internal-affairs law, or whether a foreign registration (without more) alone may substitute for incorporation.

*Ease of determination and application.* This Court will have no difficulty determining and applying the law of the forum state, Maryland.

In sum, Defendants' motion is an exercise in jurisdictional cherry-picking. The Court should not reward that strategy and should hold that Maryland law applies to all counts.

---

[2] D.C.'s interest is formal rather than substantive. An entity whose charter was revoked decades ago, conducts no operations there, and repeatedly claims Maryland as its home jurisdiction does not implicate the policies served by the D.C. Nonprofit Corporation Act.

**B. Plaintiff Has Standing To Bring Derivative Claims.**

Defendants open with standing, calling the asserted defect "incurable on the facts alleged." Mot. at 7. The argument fails under either Maryland or Illinois law.

Under Maryland law, the only membership requirement for derivative standing is that the membership be contemporaneous, which is established here and not disputed. *See Hecht v. Resol. Trust Corp.*, 635 A.2d 394, 407 (Md. 2007); Compl. ¶ 12; *see also id.* ¶ 228.

Even if Illinois law applies, Plaintiff is a voting member and has standing as such. Defendants' argument to the contrary rests on the theory that "voting member" under 805 ILCS 105/107.80 means a voting member of the Fraternity's Board of Directors, and that Plaintiff, who is not on the Board, therefore cannot sue derivatively. *See* Mot. at 2, 8. Defendants are wrong. The Act does not define "voting member," and nothing in its text limits the term to directors. Moreover, Plaintiff is entitled to vote for General President and therefore is a "voting member." *See* Compl. Ex. 2, Const. art. IV, § 3.2.

Under Illinois law, Section 107.80 preserves the common law right of a "voting member" to sue in the corporation's right but supplies no definition of that term. 805 ILCS 105/107.80; *see also* 805 ILCS 105/103.15 (using the phrase "member entitled to vote" with respect to ultra vires actions, without specifying quantum of voting rights); 805 ILCS 105/108.35(d) (same, with respect to director removal). "Member" means any person "having membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws." 805 ILCS 105/101.80. The right to vote "may be limited, enlarged or denied to the extent specified in the articles of incorporation or the bylaws," but absent such a provision, "each member, regardless of class, shall be entitled to one vote on each matter submitted to a vote of members." 805 ILCS 105/107.40.

The statute thus directs the Court to the Fraternity's governing documents, which identify who can vote as "members" and give Plaintiff a vote. The Constitution provides that [e]lection to the office of General President "shall be by ballots distributed to ***each member*** who is financial [sic] with the General Organization according to the records of the Executive Director, as of the 1st day of September in the year of the General Convention in which nominations were made." Compl. Ex. 2, Const. art. IV, § 3.2 (emphasis added). The Election Handbook confirms the practice. Compl. Ex. 5 (eligible voters "include members in good standing and general members as of September 1st of the year in which nominations were made," each of whom receives a ballot and may vote). Because Plaintiff is a financially active Life Member, he receives (and has cast) ballots to vote for General President, making him a "voting member."

Defendants' argument to the contrary depends on a single phrase drawn from a different and inapposite article of the Constitution. *See* Mot. at 8 (citing Compl. ¶¶ 12, 228). Article V addresses the Board of Directors and identifies who may cast a vote ***in a meeting of that body.*** Compl. Ex. 2, Const. art. V, §§ 1.1–1.5. It designates the elected General Officers as "voting members" ***of the Board*** and designates others as "non-voting members" of the Board. *Id.* That provision does not define membership, and it does not purport to strip the general membership of the ballot that Article IV, § 3.2 expressly confers. Defendants take a term used to distinguish two categories of ***directors*** and deploy it to disqualify 290,000 members from a statutory right the Act grants. Nothing in Section 107.80 imposes a Board-membership requirement, and this Court should not add one. *See River Breeze, LLC v. Granholm*, 224 N.E.3d 233, 242-43 (Ill. App. 2d Dist. 2022) (declining to impose a restriction on derivative rights not in the statute).

Notably, Defendants offer no authority to support their novel reading of Section 107.80. Defendants cite just two cases on standing, and neither bears on the question presented. In *Staisz*

*v. Resurrection Physicians Provider Grp., Inc.*, 209 N.E.3d 361 (Ill. App. 1st Dist. 2022), the plaintiff lacked standing because her shareholder status had been revoked before she filed. *Id.* at 367–68. Here, Plaintiff's membership has never been revoked. *Umrani v. Sindhi Ass'n of N. Am.*, 201 N.E.3d 40 (Ill. App. 1st Dist. 2021) is similarly inapposite. There, the court affirmed dismissal of a derivative action because the plaintiffs failed to satisfy the numerosity requirements under *New York's* statutory scheme. Section 107.80 imposes no such numerosity requirement.

Defendants' construction is not merely unsupported; it is self-defeating. Section 107.80's derivative right is an *external* check on management. It permits members to sue in the corporation's right when those who control the corporation will not. Defendants would confine that right to the fourteen directors who control the corporation. If this is the result, the membership, which elects the General President and funds the organization, would have no recourse at all, and would leave the accused directors as the only persons with standing to bring suit ***over their own conduct***. That is the opposite of what Section 107.80 preserves.[3]

The result is the same under Section 107.75(a). Defendants argue that only voting members may inspect the Fraternity's books and records. Mot. at 27. If "voting member" means "director" as Defendants claim, then the only individuals entitled to examine the records of the alleged misconduct are those alleged to have committed it. Defendants' footnote confirms the point: they note that the Membership Manual directs delivery of the financial records to "the person or persons authorized by the Board of Directors to audit such books and records," and that it does not extend that authority to general members. Mot. at 7 n.4 (quoting Compl. Ex. 4 at 56). But that

[3] Indeed, Defendants' construction would render Section 107.80 mere surplusage, because the Board already possesses the inherent authority to cause the corporation to bring suit in its own name. Clearly, the General Assembly intended Section 107.80 to extend this right to the broader membership as an external check on those who control the corporation.

provision establishes an annual audit procedure, and is not addressed to member inspection rights. Its silence on a subject outside its scope extinguishes nothing, least of all a statutory right.

### C. Demand Was Made And Refused.

#### i. Plaintiff's Pre-Suit Demands Were Sufficient.

Defendants contend that Plaintiff's 2024 and 2025 letters do not constitute demands because neither expressly requested that the Board file suit.[4] Mot. at 9-10. That contention imports a requirement that does not exist and that the doctrine's own purpose contradicts.

Pre-suit demand is "not an onerous requirement"; it merely requires notice and opportunity. *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001) (the purpose of demand is to afford directors "an opportunity to consider, or reconsider, the issue in dispute."); *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (the purpose of demand is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation"); *Mills v. Esmark, Inc.*, 91 F.R.D. 70, 72 (N.D. Ill. 1981) (similar). A demand must identify the wrongdoers, describe the wrongful acts and the harm to the corporation, and request remedial relief. *See Bender v. Schwartz*, 172 Md. App. 648, 669 (2007); *Toscano v. Koopman*, 148 F. Supp. 3d 679, 685-86 (N.D. Ill. 2015). However, a demand need not specify any legal theory, every supporting fact, or the quantum of damages. *See id.* Delaware authority, which

[4] Defendants' position on what the demands lacked has shifted over time. Though the Motion argues Plaintiff never demanded the Board bring suit, the Fraternity's June 2026 statement advances a different theory: that Plaintiff "did not properly invoke or pursue" the Grievance and Discipline process, which the statement calls "the exclusive and controlling mechanism for addressing disputes of this nature." And the Board's contemporaneous conduct, *see* Compl. ¶¶ 192, 194, 217, confirms it understood Plaintiff's letters to be formal demands, even as its response fell far short of the good-faith investigation those demands required. Having treated the letters as demands upon receipt, Defendants cannot recharacterize them now.

both Maryland and Illinois treat as highly persuasive,[5] is in accord: no magic words are required. *Solak on Behalf of Ultragenyx Pharm. Inc. v. Welch*, C.A. No. 2018-0810-KSJM, 2019 WL 5588877, at *4 (Del. Ch. Oct. 30, 2019). The inquiry is whether the communication placed the recipient on notice of possible wrongdoing in a manner enabling corrective action. *Id.*

The February 2024 demand, accompanied by a sixty-five page supporting submission, identified the responsible parties, set forth the harms to the Fraternity, and requested investigation, governance reform, and corrective measures. Compl. Ex. 22. The February 2025 demand, sent through counsel, renewed those requests, added the unauthorized Constitutional Convention, the Southern Region deficit, and the tax-compliance failure, and warned that litigation would follow should the Board decline to act. Compl. Ex. 26. Each element the relevant authorities require is present: wrongdoers, facts, harm, and a request for corporate action. Defendants cite no authority holding that a demand of this specificity fails for want of a particular phrase, and neither *Valiquet v. First Fed. Sav. & Loan Ass'n of Chicago*, 408 N.E.2d 921 (Ill. App. 1st Dist. 1979) nor *Am. Nat'l Bank v. Richoz*, 545 N.E.2d 550 (Ill. App. 2d Dist. 1989) announces such a rule.

Plaintiff's conciliatory tone and preference to resolve this matter within the Fraternity, which Defendants now attack, exemplifies the demand doctrine's goal of internal remediation before litigation. *See Mills*, 91 F.R.D. at 72 (pre-suit demands allow the plaintiff to achieve his goal without "incurring the expense of litigation; the directors of the corporation are allowed to occupy their status as managers of the corporation's affairs; the corporation is left to clean its own house, free from judicial entanglements; and the courts are relieved of the burden of prematurely

---

[5] *See Kramer v. Liberty Prop. Tr.*, 968 A.2d 120, 134 (Md. 2009); *Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 509 n. 29 (N.D. Ill. 1988); *Caulfield v. Packer Group, Inc.*, 56 N.E.3d 509, 517 (Ill. App. 1 Dist. 2016);

resolving intracorporate disputes.") Penalizing cooperative language would perversely incentivize immediate litigation demands, undermining Rule 23.1's purpose.

ii. The Board Refused To Act On Plaintiff's Demands.

Once a demand is made, the board ***must*** investigate the allegations and determine whether pursuing the demanded litigation serves the corporation's interests. *Boland v. Boland*, 423 Md. 296, 330 (2011). If the corporation refuses to investigate or, after investigation, declines to take the action requested, the member may bring a demand-refused action. *Id.* at 330; *Bender*, 172 Md. App. at 666. The court then reviews whether the board acted independently, in good faith, and within the realm of sound business judgment. *Boland*, 423 Md. at 330; *Bender*, 172 Md. App. at 666–67. This inquiry turns on procedural due care – whether the board acted on an informed basis in rejecting the demand. *Bender*, 172 Md. App. at 672 (quoting *Levine v. Smith*, 591 A.2d 194, 213 (Del. 1991)). Courts look at whether the board engaged independent counsel, produced a written report, reviewed records, and interviewed witnesses. *Id.* at 671–73 (investigation reasonable where committees comprised of disinterested directors retained independent counsel, interviewed numerous witnesses, reviewed hundreds of documents, and issued lengthy reports); *Oliveira v. Sugarman*, 226 Md. App. 524, 533–35 (2016) (same, where committee retained unconflicted outside counsel, met eight times, interviewed witnesses, and the board issued a ten-page letter explaining its reasons), *aff'd*, 451 Md. 208 (2017).

As set forth in the Verified Complaint, the Board did none of these things. It retained no independent counsel. It formed no committee. Compl. ¶ 232. It interviewed no witnesses and reviewed no documents. *Id.* ¶¶ 194-195. It produced no report of any length. *Id.* ¶¶ 191-194. It conducted no investigation at all. *Id.* ¶ 195. Its answer to the first demand was a three-sentence letter that stated no findings, no procedures, and no reasons. *Id.* ¶¶ 192, 194, 229. And it

conditioned any investigation into the second demand on an implicated director – Metellus – directing it without sharing the parameters of the investigation, and Plaintiff abandoning his legal representation and acquiescing to the findings. *Id.* ¶ 216. The single step it did take — appointing an investigator — it entrusted to a conflicted and disbarred attorney who immediately recused himself and was never replaced. *Id.* ¶¶ 217–218. A response so restricted in scope, so shallow in execution, and so *pro forma* cannot survive review. *See Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 979–80 (Del. Ch. 2013) (holding the business judgment rule has "no role where directors have either abdicated their functions, or absent a conscious decision, failed to act" finding that abandonment of an investigation is an abdication of the directors' function).[6]

Defendants never engage with this framework. To the extent any part of the Motion can be attributed to demand refusal, Defendants argue that because investigations are confidential, Plaintiff's ignorance of any investigation cannot support an inference that none occurred. Mot. at 14–15. But the Grievance and Discipline Committee Chairman, who would have received any report, confirmed to Plaintiff that no report existed "because there was never any investigation, to his knowledge." Compl. ¶ 191. And a sitting Board member knew of no Board member who had seen the response letter. *Id.* ¶ 196. Those are allegations from inside the process, not inferences from silence or the "pure speculation" Defendants describe. Mot. at 14. Moreover, a board that could invoke confidentiality to justify the absence of visible action would be insulated from failure-to-investigate claims in every case – a result that flies in the face of the procedural due care Maryland law demands. *See Boland*, 423 Md. at 330-31; *Bender*, 172 Md. App. at 672–73.

[6] The Board's own public statement confirms its stance. In a press release issued after this action was filed, the Fraternity announced it had "flatly rejected" Plaintiff's offer of pre-suit mediation.

### D. In The Alternative, Demand Was Excused.[7]

Because demand is satisfied, the Court need not reach demand futility. Should it reach the question, however, demand is excused. Defendants both misstate the law upon which they rely and mischaracterize the Verified Complaint in arguing otherwise.

Assuming, *arguendo*, that Illinois law applies, Defendants' arguments regarding the futility standard – that Plaintiff "must ***establish*** impartiality [sic] and bad faith" for his conflict and unauthorized-conduct claims, "and only impartiality [sic]" for his wrongful-refusal claims, (Mot. at 11 (emphasis added)), – are incorrect. On a Rule 12(b)(6) motion, Plaintiff need not "establish" anything. He need only ***plead*** facts creating reasonable doubt that ***either*** (1) a majority of the board is disinterested and independent, ***or*** (2) the challenged decision was the product of a valid exercise of business judgment. *See In re Huron Consulting Grp., Inc. S'holder Deriv. Litig.*, 971 N.E.2d 1067, 1080–81 (Ill. App. 1st Dist. 2012). Defendants' formulation improperly raises the bar twice over. They import a proof burden that applies at trial, and they rewrite *Aronson* to require Plaintiff to satisfy both prongs when either one suffices. *See Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000) (futility prongs are in the disjunctive).[8]

Finally, Defendants reach for the hardest test in the framework — the *Caremark*/*Stone* "utter failure" standard — and purport to impose it on the entire Complaint. Mot. at 13–14 (citing *In re Huron*, 971 N.E.2d at 1083). But that test is used only for allegations that directors are conflicted because they face a substantial likelihood of oversight liability. *In re Huron*, 971 N.E.2d

---

[7] Plaintiff pleads futility of demand in the alternative, as allowed under Maryland law. *See Boland*, 423 Md. at 331 n.25 (a "derivative plaintiff may continue to contest the independence of the board members after" making a demand "and should not be prejudiced by th[e] choice.").

[8] Moreover, "bad faith" is not an independent element of any claim. It is one of several ways to defeat the business-judgment presumption, alongside fraud, illegality, self-dealing, uninformed decision-making, and corporate waste. *See In re Huron*, 971 N.E.2d at 1085; *Stamp v. Touche Ross & Co.*, 636 N.E.2d 616, 622 (Ill. App. 1st Dist. 1993).

at 1082–83. It does not govern affirmative board decisions (which fall under *Aronson*), and it is not the only way to plead impartiality. *Id.* at 1082.

In addition to misconstruing the law and improperly inflating the standard to fit their argument, Defendants mischaracterize the Complaint. They sort the futility allegations into three buckets and contest a truncated version of each. Mot. at 11. But the Complaint's actual futility pleading is broader and pled defendant-by-defendant. Compl. ¶¶ 228–246.

For example, Defendants' "buckets" all but ignore the Complaint's core self-dealing allegations. *See* Compl. ¶¶ 154, 172, 196, 207-10, 233, 238, 239, 235, 297, 298, 299. Defendants' assertion that they are not "interested" because they "are not employees of the Fraternity nor otherwise have personal financial stakes in its operation," Mot. at 11, baldly ignores Plaintiff's well-pleaded allegations (that the Court must accept as true at this stage) that Defendants received "reportable compensation and other benefits from the Fraternity," in addition to "personal perks and benefits," and that certain Defendants are beholden to others. Compl. ¶¶ 21-22. Metellus holds the office, budget, and perquisites delivered by the election he corrupted, and he solicited substantial contributions from Fraternity leaders and members to retire tens of thousands of dollars of personal debt. *Id.* ¶¶ 154, 233. Harvey received the General Counsel appointment "as direct consideration for his public September 2023 endorsement" of Metellus during the very election Plaintiff challenges. *Id.* ¶¶ 21, 185, 235. Daryl Parks used the Fraternity's membership directories to solicit contributions for his own campaign for the Florida Senate and drew the compensation of an office he occupied more than three years past its constitutional term limit. *Id.* ¶¶ 21, 207–211.

This matters under Maryland law, which defines an "interested" director for futility as one who "appear[s] on both sides of a transaction" or derives "personal financial benefit . . . in the

sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally"). *See Boland*, 423 Md. at 329.[9]

Defendants also argue that futility fails because Plaintiff "endorses the existence of the Fraternity's reporting systems" while alleging only that "Defendants failed to implement them properly." Mot. at 14 (citing Compl. ¶ 217). That, too, misstates the Complaint. Plaintiff alleges that the Fraternity's architecture is compromised because all complaints must be challenged through bodies the Defendants control. Only Board members may initiate an accusation against Board members; every accusation must be reviewed by the General Counsel, himself a Defendant; and the investigating panel is appointed by the General President, also a Defendant. Compl. ¶ 241. A process in which the accused select the adjudicators and controls each stage of review cannot generate the good-faith, independent response the demand requirement contemplates.

That structural defect is not theoretical. It operated exactly as designed, channeling Plaintiff's demands to the very fiduciaries they implicated and yielding a non-substantive review calculated to exonerate them. *See* Compl. ¶¶ 183–85, 191–95, 216–18; *Cf. In re Huron*, 971 N.E.2d at 1084 (demand not futile where plaintiff conceded "the directors had a reasonable information and reporting system in place" ***and*** pleaded no facts showing red flags ignored); *see also Los Angeles City Emps. Ret. Sys.*, 352 A.3d at 317–18 (finding board responses were "so weak as to support the inference of a bad-faith decision not to take meaningful action," including an investigation led by those "who were involved in the decision to reject" the underlying complaint).

[9] Both Illinois law and Delaware law, which Illinois applies, are in accord. *See Los Angeles City Employees' Ret. Sys. v. Sanford*, 352 A.3d 276, 322, 324–25 (Del. Ch. 2026) (excusing demand based on personal benefit and economic dependence); *Valiquet*, 408 N.E.2d at 925 (finding futility even where plaintiff failed to specifically allege financial benefits to defendants).

Collectively, the particularized facts in the Complaint, as opposed to Defendants' cherry-picked version, create a reasonable doubt that the current Board is disinterested and independent, and acted "on an informed basis, in good faith, and in the honest belief" that their conduct served the Fraternity's best interests. *See In re Huron*, 971 N.E.2d at 1085. This is especially true where, as here, the Defendants "consciously disregarded long-term, uncorrected violations," *see Wert v. Cohn*, No. 17 C 219, 2017 WL 3838098, at *6 (N.D. Ill. Sept. 1, 2017) (finding futility sufficiently pled), and have not appointed a special litigation committee, *see Boland*, 423 Md. at 332.

**E. Plaintiff's Claims Are Not Time Barred.**

Defendants ask the Court to dismiss most of the Complaint under Maryland's three-year statute of limitations because Plaintiff was "aware of the wrongs alleged" before June 25, 2023. Mot. at 17. This argument fails at every level. It misidentifies the accrual date, ignores the tolling doctrines this Complaint plainly triggers, and rests on merits assumptions the Court cannot now make. And even taken at face value, it leaves the heart of this case untouched.

*First*, Defendants seek dismissal of unspecified "portions" of Counts IV, VII, and X and "substantial amounts" of the counts resting on pre-June 25, 2023 conduct, without identifying a single allegation, paragraph, or theory to be excised. Mot. at 17–18. That does not satisfy Defendants' burden. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (statutes of limitations are affirmative defenses and dismissal is appropriate only in the "relatively rare circumstances" when expiration is clear from the face of the complaint).

*Second*, Defendants misidentify the accrual date. In Maryland, the discovery rule starts the limitations period when a claimant knew or reasonably should have known of the wrong – a two-prong test requiring both inquiry notice and a reasonably diligent inquiry that "would have disclosed" the link between injury and wrongdoing. *See CX Reinsurance Co. Ltd. v. Leader Realty*

*Co.*, 219 F. Supp. 3d 542, 546 (D. Md. 2016). Defendants collapse those inquiries. Knowing that the Fraternity's subordinate units were tax-noncompliant in 2018, or that hazing reports surfaced in 2014, is not the same as knowing that the Board had breached its fiduciary duty by consciously refusing to act on those risks. Plaintiff alleges the latter. The Complaint describes a sustained pattern of Board inaction, concealment, and retaliation extending into 2024 and 2025. *See* Compl. ¶¶ 71–86, 89, 91. Moreover, because Defendants concede they stand in a fiduciary relationship, (Mot. at 22-23), Plaintiff was "under no duty to make inquiries . . . unless and until something occurs to make [them] suspicious." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 98 (2000). The Board's affirmative assurances and sham responses suppressed the facts that would have revealed its wrongdoing and given rise to suspicion. *See, e.g.*, Compl. ¶ 68 (when Plaintiff raised the tax issue in 2018, Daryl Parks solicited an outside-counsel referral, and the Board gave further assurances in 2021, inviting reliance and forestalling any basis for suspicion).

*Third*, the statute of limitations is tolled while Defendants control the Fraternity's Board, because it is "unrealistic to expect that [they] will either facilitate discovery of a claim or assert a claim against themselves in favor of the corporation." *See Hecht*, 635 A.2d at 405 (upon certification of the question from this Court). Under the "adverse domination doctrine," the limitations period does not begin until a disinterested majority is seated and defendants bear the burden of showing someone with "the knowledge, ability and motivation to bring suit" during the period they controlled the Board. *Id.* The Complaint pleads exactly that continuing control: a Board dominated by Defendants who face substantial personal liability on these very claims and who, over a two-year period, refused to take action on Plaintiff's demands.

Defendants argue the statute of limitations is not tolled by the adverse interest exception because the Board's decisions are "valid business judgment[s]," so they cannot have "totally

abandoned" Plaintiff's interests as a member. Mot. at 17-18. That reasoning bootstraps a merits conclusion into a procedural tolling analysis. It presumes the business judgment rule applies to defeat the tolling that keeps the claim alive long enough for the Court to reach that merits question. While this was appropriate at the summary judgment stage in *Tobacco Tech., Inc. v. Taiga Int'l N.V.*, 388 Fed. App'x 362 (4th Cir. 2010), it is not appropriate on a motion to dismiss. Moreover, the Complaint pleads the Board acted for personal interests "wholly separable from the Fraternity's," Compl. ¶ 285, which is the paradigm of adverse interest.[10]

Even setting tolling aside, most of the challenged conduct occurred *inside* the three-year window. The Complaint identifies discrete wrongful acts from July 2024 forward: the September 2025 Tax Directive (*id.* ¶¶ 71–72); the November 2025 Comptroller's Report and IRS database printout (*id.* ¶¶ 73–81); the July 2024 Chicago "Constitutional Convention" (*id.* ¶¶ 198–202); the Southern Region's $250,000 deficit and refusal to investigate (*id.* ¶¶ 203–05); the February 2024 demand (*id.* ¶¶ 179–85); the October 28, 2024 McCaskill letter (*id.* ¶¶ 192–96); Netherly's October 2024 no-wrongdoing statement and admission of no review (*id.* ¶ 197); the February 2025 demand and Harvey's April 2025 advice that "the law doesn't apply to us" (*id.* ¶¶ 213–15); the April 2025 Ellis appointment and recusal (*id.* ¶¶ 217–18); Daryl Parks's 2024 misuse of Fraternity membership data and communications infrastructure (*id.* ¶¶ 207–11); Johnson's 2025 election conduct and covert sharing of membership data (*id.* ¶ 223); the September 2025 proposed election rules, (*id*. ¶¶ 224–27); and the Board's final refusal to act in December 2025 (*id.* ¶ 222).

[10] Defendants' adverse interest argument also cannot be squared with their positions elsewhere. In their standing argument, Defendants insist that Plaintiff is nothing more than a rank-and-file member without a vote. Mot. at 6-7. In their statute of limitations argument, Defendants promote Plaintiff to an agent whose knowledge starts the statute of limitations. Mot. at 17-18.

In any event, pre-2023 conduct remains relevant background evidence for timely claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

**F. Each Of Plaintiff's Claims Is Sufficiently Pled.**

i. <u>The Business Judgment Rule Does Not Bar Counts I, II, III, And VI.</u>

Defendants ask this Court to dispose of four fiduciary duty related claims on the strength of the business judgment rule alone. Because the Complaint sufficiently pleads demand futility, *see* Section IV.D *supra*, Plaintiff has, *a fortiori*, stated a claim for breach of fiduciary duty. *See Garnitschnig v. Horovitz*, 48 F. Supp. 3d 820, 832 (D. Md. 2014). Moreover, resolving whether the business judgment rule applies would require findings that are inappropriate on a motion to dismiss. *See Resol. Trust Corp. v. Hecht*, 818 F. Supp. 894, 902 (D. Md. 1992) ("[w]ith only the allegations of the complaint before the Court, it would be premature to determine the sufficiency of the business judgment defense at this juncture.").

Even if it were appropriate to address the business judgment rule at this stage, that rule does not render directors "impervious to a plaintiff's claims." *Hudson v. Prime Retail, Inc.*, No. 24-C-03-5806, 2004 WL 1982383, at *11 (Md. Cir. Ct. Apr. 1, 2004) (citing *N.A.A.C.P.*, 342 Md. at 673). The business judgment rule merely creates a rebuttable presumption that management acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Boland*, 423 Md. at 328. To rebut this presumption at this stage, Plaintiff need do no more than "allege facts showing a failure of the directors to adhere to their duties." *Hudson*, 2004 WL 1982383, at *11. Plaintiff has done more.

The business judgment rule assumes that a Board gathered information before it acted. This Board gathered none. The Grievance and Discipline Committee Chairman confirmed that no investigation occurred, the Board received and ignored repeated requests for an investigation from Fraternity leaders and its insurer, and the Board ignored longstanding tax exposure. Compl. ¶¶

63-67, 188-91, 196, 261. These examples reflect a Board that habitually makes no effort to inform itself before dismissing substantiated governance concerns.

The Complaint also pleads a pattern of bad faith conduct calculated to suppress the very governance concerns Plaintiff raised. Daryl Parks threatened litigation against Plaintiff, publicly disparaged Plaintiff's demand, and told members that Plaintiff was "costing the Fraternity money" for raising governance concerns – textbook retaliation in violation of the Fraternity's own Whistleblower Policy. Compl. ¶¶ 182, 205, 237–38. When Plaintiff renewed his demand, Metellus offered to "investigate" only if he ran the inquiry himself, Plaintiff fired his counsel, and Plaintiff agreed in advance to the findings, and the Board then appointed a disbarred attorney as its purported independent investigator who did not investigate. *Id.* ¶¶ 216–18. General Counsel Harvey, for his part, advised the Board that "the law doesn't apply to us," instructed it to ignore the demand, and falsely told the membership that no member had sued or threatened suit. *Id.* ¶¶ 215, 219. Coupled with the Board's refusal to conduct any meaningful inquiry, *id.* ¶¶ 191–95, these allegations, taken as true, plausibly show that Defendants acted not to protect the Fraternity but to shield themselves and cannot be squared with the good faith the presumption requires.

Defendants are not disinterested decision-makers reviewing arms-length transactions. They are the direct beneficiaries of the very misconduct the Complaint challenges. Metellus holds the General Presidency won through the corrupted 37th General Presidential Election. Lonzer orchestrated the interference. Harvey received the General Counsel appointment as consideration for his endorsement of Metellus. Daryl Parks diverted Fraternity membership contact information to a personal 2024 Florida Senate campaign. Johnson kept his General Office position through Lonzer's patronage while covertly campaigning for Metellus, Lonzer's chosen successor. And Howard ran the Southern Region roughly $250,000 into the red and then filed a retaliatory lawsuit

against a member who raised governance concerns. Compl. ¶¶ 114–177, 185, 203–211, 233–239, 297–98. These are self-interested acts by fiduciaries protecting their own offices, patronage, and personal projects, not decisions taken in the honest belief that they served the Fraternity's interests.

The Complaint further pleads conduct that falls outside business judgment altogether, including *ultra vires* acts and violations of the Fraternity's own Governing Documents. *See Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 539 (2003) (*ultra vires* acts fall outside the business judgment rule). The unauthorized 2024 "Constitutional Convention" cost roughly $750,000 and was convened on four days' notice rather than the thirty required. Compl. ¶¶ 198–202. Daryl Parks exercised General Counsel powers more than three years past the four-year limit. *Id*. ¶¶ 207–11. And the September 2025 Tax Directive perpetuated the Fraternity's tax-compliance failures rather than remediating them. *Id.* ¶¶ 213–14. Because such acts are not valid business decisions to begin with, no presumption ever attaches to them.

Finally, the Board never invoked the required safeguards for business-judgment deference. It appointed no special litigation committee and retained no independent counsel. Compl. ¶ 232. Plaintiff's demands were handled by the very fiduciaries whose conduct was under review, aided by a purported "investigator" who was in fact a conflicted and disbarred attorney who did not actually investigate. *Id.* ¶¶ 183–88, 215–17, 233, 235. A process this compromised cannot generate the kind of informed, disinterested decision the business judgment rule was designed to protect, especially on a motion to dismiss. *See Rich ex rel. Fuqi Int'l, Inc.*, 66 A.3d at 979–80.

Defendants' cases do not compel a different result. *In re Huron*, 971 N.E.2d 1067 and *Sherman v. Ryan*, 911 N.E.2d 378 (Ill. App. 1st Dist. 2009) involved complaints alleging little more than shareholder disagreement with an ordinary board decision. This Complaint alleges something categorically different. Defendants used corporate machinery to install themselves and

their allies in office, traded appointments for endorsements, diverted corporate assets to a personal political campaign, and retaliated against a whistleblower who tried to stop it. Defendants' assertion that Daryl Parks's diversion of member data to his Florida Senate campaign is innocuous because "no Fraternity polic[y]" disallows it, (Mot. at 12), ignores both the fiduciary duty of loyalty and the tax-exemption restrictions on § 501(c) political-campaign intervention that the Complaint pleads. Compl. ¶ 314. And Defendants' reliance on *Elleby v. Forest Alarm Serv., Inc.*, 164 N.E.3d 613 (Ill. App. 1st Dist. 2020), for the proposition that Plaintiff was "permissibly excluded" from investigations misses the point. Plaintiff does not claim a right to sit in on every investigation. Rather, he alleges, with corroboration from the Grievance and Discipline Chair himself, that no investigation was ever conducted. Compl. ¶¶ 190–91. The Court must accept that allegation as true.

ii. <u>Defendants Have Waived Any Challenge To Count III Beyond Their Attack On Count I.</u>

Defendants challenge Plaintiff's aiding and abetting claim on only one ground: that it fails with the underlying breach-of-fiduciary-duty claim. Mot. at 24. Because Count I is adequately pleaded for the reasons set forth in Section IV.F.i *supra*, Count III survives. Any other basis Defendants might have raised is waived. *See S.E.C. v. Pirate Inv. LLC*, 580 F.3d 233, 255 (4th Cir. 2009) (arguments not raised in an opening brief are waived). Moreover, even if an individual Defendant is found not to have directly breached a fiduciary duty, the Complaint alleges that each such Defendant knowingly and substantially assisted the breaches of the other Defendants, and is therefore separately liable for aiding and abetting. Compl. ¶¶ 269–75.

iii. <u>Plaintiff States A Claim For Breach Of Contract (Counts IV And VII).</u>

For a breach of contract action, Plaintiff need only identify a contractual obligation and allege facts plausibly showing a breach. *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399

(Md. 2012). The Complaint does exactly that, in five categories of breach: (1) interference in elections in violation of the Election Handbook (Compl. ¶¶ 97–177); (2) retaliation in violation of the Whistleblower Policy (*id.* ¶¶ 182, 205, 237); (3) failure to investigate misconduct using the Membership Manual processes (*id.* ¶¶ 82–96, 192–222); (4) service as General Counsel beyond the Constitution's term limit (*id.* ¶¶ 207–211); and (5) convening a "Constitutional Convention" without complying with the procedural requirements of the Constitution (*id.* ¶¶ 198–202).

Defendants only engage with the 2024 Convention. Their argument – that Plaintiff has "rebranded" a permissible "Special Convention" as a "Constitutional Convention" – is a non-sequitur. Mot. at 13. Plaintiff does not dispute that the General President may convene a Special Convention. But when constitutional amendments are on the agenda, the Constitution requires thirty days' notice, and delegates received only four. *Id.* ¶¶ 198–202; Const. art. VI, § 1.2. Defendants offer no answer to that pleaded procedural breach, because there is none.

Additionally, the Fraternity's longstanding customs provide an independent, and equally sufficient, basis for the breach-of-contract claims. *See Applestein v. Royal Realty Corp.*, 181 Md. 171, 173 (1942) (Where "a usage or custom exists in respect to a transaction and each party knows of the usage or it is generally known by persons under similar circumstances, that usage is binding upon the parties to such a transaction."). The Complaint pleads a decades-long, unbroken custom that sitting and past General Presidents do not interfere in General Presidential elections, which Defendants breached repeatedly, openly, and without consequence. Compl. ¶¶ 125–126, 148–150.

Defendants' authorities are inapposite. *Sadler* stands for the unremarkable proposition that courts do not disturb decisions made in conformity with the corporation's policies. 378 Md. at 539. The Complaint alleges the opposite – repeated and knowing departures from the Governing Documents. *See, e.g.*, Compl. ¶ 279. *Travelers' Ins. Co. v. Hermann*, 140 A. 64 (Md. 1928),

forbids invoking custom to override an express contract, but the Complaint does no such thing. Instead, it fills the space the written rules leave open and is reinforced by the Election Handbook's own prohibitions on pre-certification campaigning and General Office involvement in candidate campaigns. Compl. Ex. 5 at 7, 11. And *Froelich v. Erickson*, 96 F. Supp. 2d 507 (D. Md. 2000), a case decided on summary judgment, provides no basis to dismiss Plaintiff's unjust enrichment claim, as pleading in the alternative is permitted under Federal Rule 8(d)(2).

iv. <u>The Intracorporate Conspiracy Doctrine Does Not Bar Count V.</u>

Defendants' own authority contradicts their intracorporate conspiracy argument. Under *Liqui-Box Corp. v. Scholle IPN Corp.*, the doctrine does not apply "where the agent's interests diverge from those of the principal" and the agent acts beyond "his authority or for his own benefit." 449 F. Supp. 3d 790, 804 (N.D. Ill. 2020); *see also ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (the doctrine does not apply where the conspirator "possesses a personal stake independent" of the corporation). The Complaint pleads exactly that. *See* Compl. ¶ 285 (each Defendant acted "with personal interests independent of and wholly separable from the Fraternity's"). The doctrine also cannot bar a conspiracy that includes third-parties. *See* Compl. ¶¶ 282, 286; *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*, 598 F. Supp. 3d 348, 359 (D. Md. 2022) (Gallagher, J.) (the intracorporate-conspiracy doctrine does not apply where the corporate defendants conspired with non-employees or non-agents of the corporate entity).

v. <u>Plaintiff States A Claim For Books-and-Records Inspection (Count VIII).</u>

Defendants' sole argument for dismissal of Count VIII is that only voting members have inspection rights. This argument fails for the reasons set forth in Section IV.B *supra*.

vi. <u>The Complaint States A Claim For *Ultra Vires* Acts (Count IX).</u>

Defendants contend that because the Fraternity has general corporate power to hold conventions and manage its affairs, the challenged acts cannot be *ultra vires*. Mot. at 28.

Defendants cite no authority for that proposition, because none exists. An act is *ultra vires* not only when the corporation lacks the capacity to act, but when its officers or directors purport to act beyond the authority conferred upon them by the corporation's governing documents or applicable law. *See Wolfson v. Dugout Northbrook, LLC*, 277 N.E.3d 446, 453 n.4 (Ill. App. 1st Dist. 2025); *see also Steele v. Diamond Farm Homes Corp.*, 211 A.3d 411, 418–19 (Md. 2019). The Complaint pleads four such acts with particularity, (Compl. ¶¶ 310–314): (1) the 2024 "Constitutional Convention," convened without suspending the Constitution's amendment procedures and on just four days' notice, (*id.* ¶¶ 200), 314, Const. art. VI, § 1.2; (2) the September 2025 Tax Directive, which perpetuated the Fraternity's tax-compliance failure, exposing it to liability, (Compl. ¶ 314(b)); (3) Daryl Parks's exercise of General Counsel powers three years past the four-year term the Constitution fixes, (*id.* ¶ 314(c)), Const. art. IV, § 4.3, and his diversion of Fraternity resources to a personal Florida Senate campaign, prohibited by § 501(c) and serving no chartered purpose, (Compl. ¶ 314(c)); and (4) violations of express election restrictions by using official positions, Fraternity communications infrastructure, and membership data to support a candidate, (*id.* ¶¶ 125–126, 166–177, 223, 314(d)); Ex. 5 at 15. Plaintiff does not merely challenge "unwise" decisions made within the scope of Defendants' authority, Plaintiff alleges Defendants acted outside the Fraternity's Governing Documents altogether. Accordingly, Count IX states a claim.

vii. <u>The Complaint States A Claim for Declaratory Judgment (Count X).</u>

Defendants claim Count X should be dismissed because no live rights are at stake. Mot. at 29. But that the challenged events arose in the past does not, as Defendants suggest, defeat declaratory jurisdiction. Nearly every declaratory-judgment action grows out of past conduct; what matters is whether a declaration will resolve present rights and obligations. It will plainly do so here. Plaintiff seeks a declaration resolving the validity of governance actions that continue today, including ongoing tax directives, the 2024 election result that continues to seat the General

President, the 2024 amendments that bind members, revised rules that will be implemented in upcoming elections (where some of the candidates may be implicated in this case), and Defendant Daryl Parks's ongoing exercise of authority and access to Fraternity resources. A declaration on these forward-looking questions will have immediate practical consequences for the Fraternity.

**G. Any Dismissal Should Be Without Prejudice.**

To the extent the Court sees fit to dismiss any part of the Complaint, such dismissal should be without prejudice and with leave to amend. Dismissal with prejudice is appropriate only if "there is no set of facts the plaintiff could present to support his claim." *Scott v. Caroline Cnty., Maryland*, No. CV ADC-20-0603, 2020 WL 5653398, at *6 (D. Md. Sept. 22, 2020). That standard is far from met here. Plaintiff should be afforded the opportunity to amend should the Court conclude that any claim, as currently pleaded, falls short of the required standard.

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully Submitted,

WOMBLE BOND DICKINSON (US) LLP

/s/ *Jasmine G. Chalashtori*
Jasmine G. Chalashtori (Bar No. 20179)
2001 K Street NW, Suite 400 South
Washington, DC 20006
(202) 857-4410
Jasmine.Chalashtori@wbd-us.com

James E. Connelly (admitted *pro hac vice*)
1331 Spring St. NW, Suite 1400
Atlanta, GA 30309
(404) 888-7496
James.Connelly@wbd-us.com

Andre M. Davis (Bar No. 00362)
Chukwukpee Nzegwu (Bar No. 21730)

100 Light St, 26th floor
Baltimore, MD 21202
(410) 545-5861
Andre.Davis@wbd-us.com
Chukwukpee.Nzegwu@wbd-us.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, a copy of the foregoing was electronically filed with the Court using the CM/ECF system and served on all counsel of record.

/s/ *Chukwukpee Nzegwu*
Chukwukpee Nzegwu (Bar No. 21730)