**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Gregory S. Parks, J.D., Ph.D., derivatively on behalf of Alpha Phi Alpha Fraternity, Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Willis L. Lonzer, III,<br>Lucien J. Metellus, Jr.,<br>Jeramaine O. Netherly,<br>Daryl D. Parks,<br>Wayne C. Harvey,<br>Denny N. Johnson,<br>Cecil E. Howard,<br><br>Defendants,<br><br>and<br><br>Alpha Phi Alpha Fraternity, Incorporated<br><br>Nominal Defendant. | ) | Case No.: 1:26-cv-02544 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Sydney Hargrove (D. Md. Bar No. 30951)
Jarrod Loadholt (*pro hac vice* pending)
**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Avenue, NW, Suite 800
Washington, DC 20036
Phone: (202) 971-4064
Fax: (202) 408-5146
shargrove@taftlaw.com
jloadholt@taftlaw.com

Dated: October 7, 2026

Defendants Willis L. Lonzer, III, Lucien J. Metellus, Jr., Jermaine O. Netherly, Daryl D. Parks, Wayne C. Harvey, Denny N. Johnson, Cecil E. Howard, and nominal defendant Alpha Phi Alpha Fraternity, Inc. (individually and collectively, "Defendants"), respectfully submit this reply in further support of its motion to dismiss Plaintiff's claims against them (the "Motion").

## INTRODUCTION

Plaintiff spends much of his Opposition accusing Defendants of mischaracterizing his Complaint. The irony is difficult to miss. Strip away Plaintiff's rhetoric, his own recharacterizations and newly asserted facts, and we are left with the same fatal defects originally identified in the Complaint — no facts conferring Plaintiff the requisite standing to pursue his derivative claims, showing the demand requirement was met, or otherwise stating a viable claim. These are not pleading technicalities. They are dispositive defects that argument or rhetoric cannot cure. The Complaint should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF LACKS STANDING

#### A. Plaintiff's Opposition Distracts the Court from the Applicable Legal Framework.

Plaintiff's standing argument is smoke and mirrors designed to obscure a straightforward threshold issue. He attempts to manufacture uncertainty about the Fraternity's corporate status by conflating where it was originally chartered with where it is currently incorporated, and then compound that error by accusing the Fraternity and its representatives of dishonesty. *See* Opp. at 7-8. Plaintiff continues with an unreasonable misreading *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), to suggest Illinois, generally, has no interest in the internal affairs of a corporation like the Fraternity. *See* Opp. at 8-9. None of these maneuvers withstands scrutiny.

There is nothing uncertain about the Fraternity's corporate status. Plaintiff's own exhibit identifies the Fraternity as an active Illinois not-for-profit corporation, "perpetually" registered as such since 1954. *See* Opp., Ex. B at 1 (citation modified). Plaintiff identifies no interruption to that status; nor could he in the face of the business record plainly showing that the Fraternity's status as an Illinois corporation has remained valid continuously since its registration.[1] That the Fraternity was originally chartered in D.C. does not create a present-day conundrum requiring this Court to resort to a significant relationship test to assess derivative standing. The Illinois Annual Reports do not suggest otherwise, much less support Plaintiff's accusation of dishonesty. *See* Opp. at 8. The report form merely asks where the Fraternity was originally incorporated, and D.C. is the truthful answer. *See* Opp., Ex. C at 3. Plaintiff thus confuses historical origin with present corporate status, then tries to turn that confusion into an accusation of misconduct. Tellingly, this supposed deception is nowhere to be found in Plaintiff's seventy-five-page Complaint chronicling more than a decade of alleged wrongdoing.[2]

Plaintiff's reliance on *Edgar* is equally unavailing. His argument first assumes that the Fraternity is a foreign corporation in Illinois, something Plaintiff has not established. All Plaintiff has shown through the business records attached to his Opposition is that Maryland expressly designates the Fraternity as a "Foreign Corporation" whereas Illinois identifies it as a "Corporation" without further qualification. *See* Opp., Ex. D; Opp., Ex. B at 1. But even assuming, *arguendo*, that the Fraternity is a foreign Illinois corporation, *Edgar* does not establish the bright-line rule Plaintiff claims it does. *See* Opp. at 9. In *Edgar*, the Court concluded that the

---

[1] *See also Perpetual*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/perpetual, (last visited October 7, 2026) (defining "perpetual" as meaning "valid for all time.")

[2] As discussed further *infra*, it is improper for a plaintiff to raise new claims or facts through a motion to dismiss opposition. *See McDonald v. LG Elecs. U.S.A., Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016).

internal affairs doctrine was "of little use to the State in *the context*" of a tender offer, a transaction that did not implicate the internal affairs of a company. 457 U.S. at 645 (emphasis added) (original alteration omitted). Here, the challenged conduct in Plaintiff's Complaint does implicate the internal affairs of the Fraternity, which makes the context-specific conclusion in *Edgar* inapplicable. Moreover, Plaintiff cannot transform this context-specific conclusion into a categorical rule that Illinois has no interest in regulating a foreign corporation's internal affairs.

### B. <u>Plaintiff Lacks Standing Under Illinois Law and D.C. Law</u>.

Defendants incorporate by reference all arguments in the Motion that Plaintiff lacks derivative standing under Illinois law. But even assuming, without conceding, that D.C. law applies because the Fraternity was originally chartered there, Plaintiff still cannot establish standing to pursue his Complaint.

Under D.C. law, a derivate action on behalf of a non-profit corporation can only be brought by (i) "[a] member or members having 5% or more of the voting power, or by 50 members, whichever is less;" or (ii) a director or "member of a designated body." D.C. Code Ann. § 29-411.02. Plaintiff satisfies neither requirement. He sues alone as just one of an alleged 290,000 Fraternity members, falling far short of the requisite 5% of voting power. *See* Opp. at 11. Nor does Plaintiff fit within the second category of members. Plaintiff concedes he is not a Board member and he does not allege membership in any "designated body" under D.C. law.[3] *See* Opp. at 10; Compl., ¶ 12. Plaintiff therefore lacks derivate standing under D.C. law.

[3] *See* D.C. Code Ann. § 29-401.02(8) (defining a "designated body" as "a person or group, other than a committee of the board of directors, that has been vested by the articles of incorporation or bylaws with powers that, if not vested by the articles or bylaws in that person or group, would be required by this chapter to be exercised by the board or the members.")

Plaintiff's newfound assertion that he is a "voting member" of the Fraternity cannot save his claim under Illinois law either. This allegation appears nowhere in the Complaint, which only discusses voting membership as to the Board. Opp. at 10-11; *see* Compl., ¶¶ 53, 231. And this omission cannot be cured through Plaintiff's Opposition because motions are not proper vehicles for adding new claims to a complaint. *See McDonald*, 219 F. Supp. 3d at 541 ("A plaintiff is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.") (citation omitted); *see also Moise v. Howard Cnty. Det. Ctr.*, No. CV RDB-18-1355, 2019 WL 454101, at *4 (D. Md. Feb. 4, 2019). Maryland courts refuse to consider new facts or theories raised for the first time in a motion to dismiss opposition. *See Id.*; *Mohamed v. Bank of Am.*, N.A., 771 F. Supp. 3d 695, 708 n.5 (D. Md. 2025). Plaintiff cannot therefore establish standing to pursue the allegations in his Complaint.

## II. DEMAND IS NOT SATISFIED OR EXCUSED

Plaintiff's Opposition arguments on demand are an exercise in post hoc reconstruction. He cannot retroactively transform his internal grievances into derivative demands and then fault the Board for failing to act on claims that were never presented. *See* Opp. at 13-16. Nor can he save his demand futility claims by recasting the Fraternity's arguments and reframing his own Complaint allegations. *See* Opp. at 17-20. Plaintiff still fails to allege facts creating a reasonable doubt that the Board could impartially consider a demand under the *In re Huron* test. His derivative claims should therefore be dismissed.

***No Valid Demand or Refusal.*** Plaintiff makes much of the length and contents of the 2024 letter's "supporting submission" and the fact that he sent his 2025 letter through counsel. Opp. at 14. But neither volume nor legal packaging can turn a grievance into a demand capable of

conferring Plaintiff derivative standing. Only a demand that the Board take action on the claims now in his Complaint can do that.[4]

Plaintiff's 2024 letter primarily delves into allegations of false and defamatory statements, as well as fraudulent conduct. *See* Compl., Ex. 22 at pp. 2-4. Those are not the claims he now pursues and faults the Board for allegedly refusing to pursue. His "sixty-five page supporting submission" does not cure the letter's deficiencies. Far from demanding Board action on the Complaint claims, the submission is an opinion piece intended for the "broader brotherhood," recounting Plaintiff's unverified version of events and explaining why he believed the General Presidential race he lost "so sharply deviated from the norm." Compl., Ex. 22 at p. 2. Whatever the submission may have been, it was not a demand that the Board take action on the claims now asserted in the Complaint.

Plaintiff's 2025 letter does not fill that gap. Although steeped in corporate law terminology, it likewise fails to offer facts demonstrating Plaintiff put the Board on notice of his Complaint claims. *See* Compl., Ex. 26. To start, this letter does not identify its own addressee, Defendant Harvey, as one of Plaintiff's alleged wrongdoers. *See* Compl., Ex. 26. And neither the 2024 nor 2025 letter asks the Board to pursue Defendant Metellus, now alleged to be a principal wrongdoer in the Complaint. *See* Compl., Exs. 22 and 26. To the contrary, Plaintiff portrayed Defendant Metellus as his political opponent and a passive beneficiary of others' conduct, expressly stating "I don't blame Brother Metellus for the antics in this General Presidential race." Compl., Ex. 22 at p. 16; *see also id.* at p. 3; Compl., Ex. 26 at p. 4. Plaintiff cannot fault the Board for failing to pursue claims against individuals he never identified as wrongdoers or targets of

[4] Defendants note that in support of his demand argument, Plaintiff again attempts to inject new facts and claims not alleged in the Complaint to bolster his position. *See* Opp. at 13, n. 4.

Fraternity action. Those omissions defeat derivative standing. *See Am. Nat. Bank v. Richoz*, 545 N.E.2d 550, 554–55 (Ill. App. Ct. 1989) (no standing for derivative action where there was no demand that corporate directors bring suit against a specific individual on the claims asserted in the complaint).

Plaintiff's alternative reliance on the Board's purported "refusal to act" fares no better. Opp. at 16. Even putting aside his attempt to shift the governing law to Maryland, the framework Plaintiff invokes ultimately asks the same question: whether the Board acted "within the realm of sound business judgment." *Boland v. Boland*, 423 Md. 296, 330 (2011); *see Am. Nat. Bank*, 545 N.E.2d at 554 ("To maintain a suit on behalf of a corporation, a shareholder must allege and prove an equitable basis for such intervention, and a shareholder is no more entitled to challenge a decision by the directors not to sue through a derivative action than to so challenge any other board decision.") (citation omitted). As Defendants explained, Plaintiff's Complaint alleges no facts overcoming the presumption that the Board exercised valid business judgment, i.e., establishing interested directors or bad faith. *See* Mot. at 10-15. Thus, whether framed as an inadequate demand or an improper refusal, Plaintiff's allegations cannot support derivative standing.

Plaintiff's invocation of a "conciliatory tone" changes nothing. Opp. at 15. The deficiency is one of substance, not tone. Neither letter demanded the Board take action on the corporate claims or against the alleged wrongdoers Plaintiff now seeks to pursue derivatively.

***Demand Should Not Be Excused.*** Plaintiff's demand futility arguments do little more than mischaracterize Defendants' Motion and repeat allegations that were deficiently pled. *See* Opp. at 17-19. Neither tactic cures the Complaint's fundamental defect of failing to plead particularized facts creating a reasonable doubt of the Board's impartiality.

Plaintiff first incorrectly claims that Defendants require him to satisfy both prongs of the *In re Huron* test. *See* Opp. at 17. The Motion does no such thing. Rather, it distilled and organized Plaintiff's sprawling 300-plus allegations by conduct type and legal theory implicated. As to the allegations of affirmative Board conduct, Defendants thereafter explained that Plaintiff's director compensation claims premised on conflict of interest are subject to the impartiality standard and his director oversight liability claims premised on unauthorized conduct were subject to an assessment of bad faith. *See* Mot. at 11-15; *In re Huron*, 971 N.E.2d at 1081-83. The Motion addressed each theory under its corresponding standard without combining the two.

Nor did Defendants improperly impose the "hardest test" for director oversight liability over the entire Complaint. *See* Opp. at 17-18. Whatever label Plaintiff now prefers, his allegations challenge the Board's ability to impartially consider a demand due to allegedly facing a substantial likelihood of liability for failing to prevent or remedy misconduct. *See* Compl., ¶¶ 231, 233-39; *see also* Opp. at 21 (explaining that the Complaint pleads that "[the] Defendants who face substantial personal liability on these very claims . . . refused to take action on Plaintiff's demands.") That is the theory the *In re Huron* court evaluated under the *Caremark* framework. *See In re Huron*, 971 N.E.2d at 1082-83. Plaintiff cannot avoid this standard by relabeling his Complaint allegations in the Opposition.

Plaintiff's compensation allegations equally lack merit. Contrary to his assertion, Defendants did not "baldly ignore[]" those allegations. *See* Opp. at 18. The Motion addressed them and explained why the allegations do not create reasonable doubt as to director impartiality. *See* Mot. at 11, n.7. Furthermore, merely alleging "reportable compensation and other benefits" says nothing about whether a director has the type of personal financial interest necessary to compromise impartiality.

In *In re Huron*, the court rejected allegations concerning "the sheer size of the atypical director fees" as too conclusory and likewise held that receipt of a salary, without more, did not establish a lack of independence. 971 N.E.2d at 1082, 1086. Plaintiff alleges even less here. He does not quantify the compensation or benefits, allege that any recipient failed to perform services in exchange, or claim that any compensation was excessive for those services. *See* Opp. at 18; Compl., ¶¶ 21-22; *In re Huron*, 971 N.E.2d at 1086 (rejecting argument that mere receipt of a salary created doubt of independence because it was never alleged that the salary "was exorbitant for the services provided.") Labeling compensation "reportable" does not transform it into ill-gotten gains, and Plaintiff supplies no particularized facts showing otherwise.

Simply repeating the Complaint's deficient allegations does not establish futility. *See* Opp. at 19. Plaintiff's Opposition continues to conflate what he believes is wrongdoing with a showing that the Board could not impartially consider his allegations of wrongdoing. As *In re Huron* makes clear, bad outcomes do not establish bad faith. 971 N.E.2d at 1084. Thus, regardless of Plaintiff's disagreement with how Defendants characterize individual allegations, the dispositive deficiency remains unchanged—he has not pleaded particularized facts creating reasonable doubt of director independence or facts establishing bad faith. The Complaint should therefore be dismissed for failure to adequately plead demand futility.

## III. PLAINTIFF'S CLAIMS ARE TIME-BARRED IN WHOLE OR IN PART

Defendants' alleged failure to identify each and every untimely Complaint paragraph does not negate the fact that "all facts necessary to this affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (alterations, citations and quotation marks omitted). Indeed, the statute of limitations inquiry examines the sufficiency of facts alleged in a complaint; not how many of those allegations were raised in a motion to dismiss. *See McGhee v. JP Morgan Chase Bank, N.A.*, No. CIV.A. DKC 12-3072, 2013

WL 4495797, at *7, n. 9 (D. Md. Aug. 20, 2013) ("Dismissal is proper [] when the *face of the complaint* clearly reveals the existence of a meritorious defense.") (emphasis added) (citation omitted); *see also Eniola v. Leasecomm Corp.*, 214 F. Supp. 2d 520, 525 (D. Md. 2002) ("[T]he appropriate standard when analyzing [a statute of limitations] claim under Rule 12(b)(6) is *whether it is clear from the face of the complaint* that Plaintiffs' claims [] are time barred.") The Opposition reads a burden into the standard that simply isn't there. *See* Opp. at 20.

The Opposition also misapplies the knowledge requirement for a claim to accrue and the statute of limitations to begin. *See* Opp. at 20-21. A plaintiff need not know the *specific* cause of action available to him; only the facts and circumstances underlying the wrong. *See Hecht v. Resol. Tr. Corp.*, 333 Md. 324, 334, 635 A.2d 394, 399-400 (1994). Plaintiff's own Complaint establishes he had knowledge of the factual circumstances underlying his claims long before 2023. *See e.g.*, Compl., ¶¶ 63, 68 (Plaintiff detailing how he informed the Board of alleged tax noncompliance in 2018 and 2021). Having admittedly identified, investigated, and sought action on the alleged misconduct pre-2023, Plaintiff cannot now claim ignorance of the facts underlying it. That he may not have known how the Board would ultimately respond to the conduct he identified does not postpone accrual of his claims based on the facts already known to him.

Nor can Plaintiff use the adverse domination doctrine to erase that knowledge. *See* Opp. at 21. For years, Plaintiff has touted that **<u>he knows</u>** the Fraternity is fraught with misconduct and malfeasance—that was the reason he was "Fighting for the Soul of Alpha." *See* Compl., Ex. 22 at pp. 5-69. Indeed, Plaintiff's Complaint is premised on his alleged superior knowledge of the Fraternity's internal affairs. He cannot simultaneously invoke adverse domination to disclaim that knowledge for statute of limitations purposes.

Plaintiff's reliance on *Tobacco Tech* is also misplaced for at least two reasons. *See* Opp. at 22. First, nothing in the opinion suggests that its standing or tolling analysis was unique to a summary judgment posture. Second, the court's holding directly supports Defendants' argument: the same facts establishing a transaction's reasonableness also defeat the application of the adverse interest exception. *See* Mot. at 17-18; *Tobacco Tech.*, 388 Fed. Appx. at 373–74 ("We have just held that the Final Agreement was a fair and reasonable transaction for TTI. ***For the same reasons***, we are constrained to find that TTI cannot meet its burden to show that the adverse interest exception applies in this case.") (emphasis added).[5]

## IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS

### A. The Business Judgment Rule Defeats Plaintiff's Fiduciary Duty Claims.

As Plaintiff concedes, the demand futility inquiry can be dispositive of the sufficiency of his fiduciary duty related claims. *See* Opp. at 23. Thus, as Defendants explained in their Motion, Plaintiff's failure to overcome the presumption of valid business judgment for demand futility means he has not presented an *a fortiori* claim for breach of fiduciary. *See* Mot. at 15, 22. Plaintiff's other arguments in support of the sufficiency of his fiduciary duty related claims (Counts I, II, III, and VI) fare no better. *See* Opp. at 23-26.

At the outset, Plaintiff is wrong that the application of the business judgment rule is categorically inappropriate at the motion to dismiss stage. *See* Opp. at 23. *In re Huron* proves this point. In that case, the court applied the business judgment framework to the several of plaintiff's allegations and then dismissed them for failing to state a claim. *In re Huron*, 971 N.E.2d at 1080-86. Plaintiff's contrary authority does not change that result. His cherry-picked citation relies on

[5] Plaintiff's argument in a footnote that Defendants' standing and adverse interest arguments are at odds is also futile. *See* Opp. at 22, n. 10. The mere fact that an individual is not a voting member of an organization does not speak to whether they have sufficient knowledge to commence the accrual of a claim.

an outdated case applying Maryland law, which does not govern the fiduciary duty related claims Plaintiff asserts here.

Even if Illinois law does not apply here, though Defendants maintain it does, Plaintiff's claims still fail. That is because his fiduciary duty related claims would be governed by D.C. law based on the Fraternity's original charter, not Maryland law. And D.C. courts likewise apply the business judgment rule at the motion to dismiss state. *See Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 730 (D.C. 2011) (dismissing corporate waste claim for failure to overcome presumption of valid business decision); *id*. ("Courts are very deferential to the business judgment of officers and directors of a corporation in decision-making, and a claim of waste, even where authorized, will be upheld only where a shareholder can 'show that the board irrationally squandered corporate assets.'") (alteration, citation, and internal quotation marks omitted). Regardless of the applicable law, Plaintiff cannot evade invoking the business judgment rule now.

Further fatal to Plaintiff's fiduciary duty related claims is his continued conflation of an unfavorable outcome with a failure of the Board to discharge its duties. *See* Opp. at 23. Even accepting Plaintiff's premise that he need only allege facts showing the Board failed to adhere to its duties, he has not done so. As explained in the Motion, the Complaint alleges outcomes that Plaintiff dislikes, not facts demonstrating any dereliction of duty. *See* Mot. at 14, 23-24. For example, accepting as true—as we must at this stage—Plaintiff's allegations that the Board did not promptly initiate an investigation each time he demanded one (*see, e.g.*, Compl., ¶¶ 63-67, 188-91, 196, 261), that does not plausibly establish that the Board gathered no information, considered no alternatives, or failed to determine whether inaction, or another course of action, was in the Fraternity's best interests. Plaintiff cannot convert what he does not know about the Board's deliberative process into an affirmative allegation that no such process occurred. Because

he alleges no facts showing that the conduct challenged in the Complaint lacked a legitimate business purpose, Plaintiff has failed to state a claim. *See Elleby v. Forest Alarm Serv., Inc.*, 164 N.E.3d 613, 627 (Ill. App. 1st Dist. 2020).

The remainder of Plaintiff's arguments on this issue do not cure the defects in his Complaint; they merely repackage its insufficient allegations. *See* Opp. at 24-26. Plaintiff attempts to distinguish *In re Huron*, *Sherman*, and *Elleby* based on factual differences, but that misses the point. Defendants rely on those cases for the legal principles governing Plaintiff's claims, not for factual identity. Differences in underlying transactions therefore do not undermine the principles for which those cases are cited or their applicability to Plaintiff's claims. Plaintiff cannot avoid these principles by distinguishing cases at the margin any more than he can cure deficient allegations by repeating them. At bottom, Plaintiff's Opposition disputes Defendants' characterization of his allegations without curing the deficiencies that make those allegations insufficient. *See* Mot. at 22-25.

### B. Plaintiff Mischaracterizes and Ignores Relevant Law Governing His Contract Claims.

As to his contract claims, Plaintiff is wrong that Defendants only engaged with his Convention related contract claims. *See* Opp. at 27. Because Plaintiff's contract claims substantially overlap with the retaliation, failure to investigate, and term limit allegations addressed in the Motion's demand futility discussion, Defendants incorporated that discussion by reference rather than wasting pages to rehash the same facts and analysis. *See* Mot. § I.B. The point was straightforward — none of Plaintiff's allegations identify conduct prohibited by the Fraternity's Governing Documents and therefore none state a breach of contract. *See* Mot. at 25. Plaintiff cannot manufacture a deficiency in response merely because the Fraternity chose cross-reference its arguments over repetition.

Plaintiff's own retelling of his Special Convention allegations similarly falls flat. A closer look at the constitutional provision he cites in support thereof reveals that it imposes an obligation on a Regional Vice President, not the Fraternity's General President as Plaintiff infers. *See* Opp. at 27. Plaintiff's alleged "longstanding customs" cannot rewrite the Constitution's unambiguous text. *See Travelers Ins. Co. v. Hermann*, 140 A. 64, 70 (Md. 1928).

Plaintiff's argument in support of his unjust enrichment claim also fails because it conflates federal pleading rules with Maryland substantive law. *See* Opp. at 28. That *Froelich* was decided at summary judgment does not alter Maryland's substantive rule that unjust enrichment is unavailable where an express contract governs the parties' relationship. Federal Rule 8 permits unjust enrichment to be pleaded in the alternative only while the existence or enforceability of the governing contract remains unresolved. *See Franzoy v. Yockey*, 695 F. Supp. 3d 696, 700 (D. Md. 2023). Here, no one disputes the existence or enforceability of the Fraternity's Governing Documents, so there is nothing left to resolve before Plaintiff's unjust enrichment claim can be properly dismissed. *See CDC-LCGH, LLC v. Mayor*, 313 F. App'x 637, 641–42 (4th Cir. 2009). Federal Rule 8 may allow alternative pleading, but it does not preserve a substantively unavailable claim once the predicate for pleading in the alternative is undisputed.

### C. Plaintiff's Conspiracy Claim Should Be Dismissed Because Defendants Are Agents of the Fraternity.

Plaintiff's reliance on this Court's opinion in *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*, 598 F. Supp. 3d 348 (D. Md. 2022) to fortify his conspiracy claim is thoroughly misplaced. *See* Opp. at 28. In *Blades of Green*, the corporate director defendants allegedly conspired with current and former employees to compete *against* the company. 598 F.Supp.3d at 357-59. Plaintiff's Complaint pleads no comparable conspiracy involving third-party non-agents. Indeed, having asserted breach of fiduciary duty claims against every Defendant for alleged harm

*to* the Fraternity, Plaintiff cannot now recast those same Defendants as third parties or non-agents just to fit *Blades of Green*. It is telling that Plaintiff cites no Complaint allegations in the Opposition to support this newly minted theory.

### D. **Plaintiff Cannot Show Defendants' Actions Were Outside Corporate Authority.**

As to his *ultra vires* claim, the Opposition again repackages Plaintiff's deficient Complaint allegations without curing the defects. *See* Opp. at 29. Nothing in the Complaint plausibly takes any of the challenged decisions outside the presumption of valid business judgment. *See* Mot. at 28-29. Plaintiff's general counsel term limit allegation is illustrative of the problem. Even assuming, *arguendo*, Defendant Daryl Parks exceeded the term limit prescribed by the Fraternity's Constitution, Plaintiff alleges no facts suggesting that the Fraternity's decision to retain Parks beyond the limit was anything other than an exercise of valid business judgment. Plaintiff does not allege, for example, that retaining the incumbent general counsel was beyond the scope of another power vested in the Board, much less facts overcoming the presumption that the decision was valid. A technical departure from an internal term limit, standing alone, does not plausibly convert a Board decision into actionable *ultra vires* conduct. *See, e.g.*, *Chapman v. Freeport Sec. Co.*, 529 N.E.2d 6, 10 (Ill. App. Ct. 1988) ("Whether a violation of the bylaws is to actually be considered *ultra vires* is another question" than whether a violation occurred).

### E. **Plaintiff Is Not Entitled to Declaratory Judgment.**

The Opposition's final attempt to salvage Plaintiff's Complaint fundamentally misconstrues Defendants' argument against Plaintiff's claim for declaratory judgment. *See* Opp. at 29-30. There are no present rights or obligations for the Court to declare or define. Plaintiff simply disagrees with how the Fraternity has operated and with Board decisions that did not go his way. But Plaintiff has no legally cognizable right to favorable Board decisions. His entitlement

as a Fraternity member is, at most, to the Board's exercise of valid business judgment. The Complaint as pled therefore does not seek a declaration of existing rights, but a judicial second-guessing of Fraternity decisions merely because Plaintiff dislikes their result.

## CONCLUSION

For the reasons set forth herein and the Motion, Defendants respectfully ask this Court to grant its motion to dismiss and all claims asserted in the Complaint with prejudice.

Dated: October 7, 2026

Respectfully submitted,

*/s/ Sydney Hargrove*

Sydney Hargrove (D. Md. Bar No. 30951)
Jarrod Loadholt (*pro hac vice* pending)
**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Avenue, NW, Suite 800
Washington, DC 20036
Phone: (202) 971-4064
Fax: (202) 408-5146
shargrove@taftlaw.com
jloadholt@taftlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2026, a copy of the foregoing was filed with the Court using the CM/ECF system and notification of such filing will be sent electronically by the CM/ECF system to all counsel of record.

Jasmine G. Chalashtori
K Street NW, Suite 400 South
Washington, DC 20006
(202) 857-4410
Jasmine.Chalashtori@wbd-us.com

James E. Connelly
1331 Spring St. NW, Suite 1400
Atlanta, GA 30309
(404) 888-7496
James.Connelly@wbd-us.com

Andre M. Davis
Chukwukpee Nzegwu
100 Light St, 26th floor
Baltimore, MD 21202
(410) 545-5861
Chukwukpee.Nzegwu@wbd-us.com

*Counsel for Plaintiff*

*/s/ Sydney Hargrove*
Sydney Hargrove